LATHAM & WATKINS LLP
Elizabeth L. Deeley (CA Bar No. 230798)
 elizabeth.deeley@lw.com
Melanie M. Blunschi (CA Bar No. 234264)
 melanie.blunschi@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

Roman Martinez (*pro hac vice* pending)
 roman.martinez@lw.com
555 Eleventh Street, NW, Suite 1000
Washington, D.C. 20004-1304
Telephone: +1.202.637.2200
Facsimile: +1.202.637.2201

*Attorneys for Defendant 2U, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## CENTRAL DIVISION

| | |
|---|---|
| IOLA FAVELL, SUE ZARNOWSKI, and MARIAH CUMMINGS, on behalf of themselves and all others similarly situated,<br><br>                              Plaintiffs,<br><br>          v.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA and 2U, INC.,<br><br>                              Defendants. | Case No. 2:23-cv-00846 SPG (MARx)<br><br>CLASS ACTION<br><br>**2U, INC.'S NOTICE OF MOTION AND MOTION TO DISMISS CLASS ACTION COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES**<br><br>Judge: Hon. Sherilyn Peace Garnett<br>Date:   May 17, 2023<br>Time:   1:30 P.M.<br>Place:  Courtroom 5C<br><br>*[Request for Judicial Notice; Declaration in Support; Proposed Orders concurrently filed herewith]* |

1

### NOTICE OF MOTION AND MOTION TO DISMISS

2   PLEASE TAKE NOTICE that on May 17, 2023 at 1:30 p.m., or as soon

3   thereafter as the parties may be heard, before the Honorable Sherilyn Peace Garnett,

4   District Judge, United States District Court for the Central District of California, in

5   the First Street Courthouse, Courtroom 5C, 350 W. 1st Street, Los Angeles, CA

6   90012, Defendant 2U, Inc. ("2U") will, and hereby does, move to dismiss the Class

7   Action Complaint ("Complaint") brought by Plaintiffs Iola Favell, Sue Zarnowski,

8   and Mariah Cummings (collectively, "Plaintiffs") pursuant to Federal Rules of Civil

9   Procedure ("FRCP") 9(b) and 12(b)(6).

10   Pursuant to Local Rule 7-3 and Rule G(1) of Judge Garnett's Standing Order

11   for Newly Assigned Civil Cases, the Parties thoroughly discussed the substance and

12   potential resolution of the filed motion by videoconference on March 1, 2023.  This

13   motion is based on this Notice of Motion and Motion to Dismiss, the following

14   Memorandum of Points and Authorities, 2U's Request for Judicial Notice, the

15   Declaration of Melanie M. Blunschi and the exhibits thereto, all pleadings and

16   papers in this action, and any oral argument of counsel.

17

18

19   Dated:  March 8, 2023                    Respectfully submitted,

20                                            LATHAM & WATKINS LLP
21                                            Elizabeth L. Deeley
                                              Melanie M. Blunschi
22                                            Roman Martinez

23                                            By  */s/ Melanie M. Blunschi*
24                                                Melanie M. Blunschi

25                                            *Attorneys for Defendant 2U, Inc.*

26

27

28

1

## <u>TABLE OF CONTENTS</u>

2
Page

3  I.   INTRODUCTION .................................................................... 11

4  II.   BACKGROUND ..................................................................... 13

5       A.   2U's Relationship With USC ......................................... 13

6       B.   The U.S. News & World Report Rankings........................ 14

7       C.   USC's Counsel Investigates USC Rossier's US News
            Rankings .................................................................... 15
8
        D.   Plaintiffs' Allegations ................................................. 16
9
   III.   LEGAL STANDARDS ............................................................ 17
10
   IV.   ARGUMENT ........................................................................ 18
11
        A.   Plaintiffs Fail To Properly Allege Their
12           Misrepresentation-Based Claims Against 2U ................... 19

13           1.   Plaintiffs Have Not Alleged 2U Knew Any Of The
                 Statements Were False............................................. 19
14
             2.   Plaintiffs Do Not Allege Any Actionable
15               Misstatements Or Omissions ...................................22

16               a.   Plaintiffs' Affirmative Misstatement Theory
                     Fails .......................................................... 22
17
                 b.   Plaintiffs' Omissions Theory Fails................. 24
18
             3.   Plaintiffs Fail To Allege That 2U Made An
19               Actionable Misstatement Or Omission On Which
                 They Relied ...........................................................28
20
                 a.   Plaintiffs Have Not Alleged That 2U Made
21                   Any Statements On The USC Rossier
                     Website ......................................................28
22
                 b.   Plaintiffs' Allegations Based On The USC
23                   Rossier Online Webpage Do Not State A
                     Claim ........................................................29
24
                 c.   Plaintiffs' Allegations About 2U's Use Of
25                   Search Engine Optimization Do Not State A
                     Claim ........................................................31
26
        B.   All Of Plaintiffs' Claims Are Barred By *Sonner* ...............32
27
        C.   Plaintiffs Have No Unjust Enrichment Claim ..................34
28

V.      CONCLUSION ................................................................................. 35

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ahern v. Apple Inc.*,
411 F. Supp. 3d 541 (N.D. Cal. 2019) ................................................................. 25

*Anunziato v. eMachines, Inc.*,
402 F. Supp. 2d 1133 (C.D. Cal. 2005) ............................................................... 22

*Ariix, LLC v. NutriSearch Corp.*,
985 F.3d 1107 (9th Cir. 2021) ...................................................................... 12, 24

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) .......................................................................................... 17

*Barrett v. Apple Inc.*,
523 F. Supp. 3d 1132 (N.D. Cal. 2021) .............................................................. 30

*Bates v. United Parcel Serv., Inc.*,
511 F.3d 974 (9th Cir. 2007) ............................................................................ 33

*BHRS Grp., LLC v. Brio Water Tech., Inc.*,
553 F. Supp. 3d 793 (C.D. Cal. 2021) ................................................................ 31

*Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D.D.*,
No. 14-0248-AG, 2014 WL 12579802 (C.D. Cal. June 4, 2014) ...................... 23

*Charbonnet v. Omni Hotels & Resorts*,
No. 20-CV-01777-CAB, 2020 WL 7385828 (S.D. Cal. Dec. 16, 2020) ........... 35

*Chuang v. Dr. Pepper Snapple Grp., Inc.*,
No. 17-01875-MWF, 2017 WL 4286577 (C.D. Cal. 2017) ............................... 35

*City of Los Angeles v. Lyons*,
461 U.S. 95 (1983) ............................................................................................ 33

*Collins v. eMachines, Inc.*,
202 Cal. App. 4th 249 (2011) ............................................................................ 25

*Comet Theatre Enters., Inc. v. Cartwright*,
195 F.2d 80 (9th Cir. 1952) .............................................................................. 35

*ConsumerDirect, Inc. v. Pentius, LLC*,
   No. 21-cv-01968-JVS, 2022 WL 1585702 (C.D. Cal. Apr. 4, 2022) ...............34

*Dana v. Hershey Co.*,
   180 F. Supp. 3d 652 (N.D. Cal. 2016).................................................................25

*Daniel v. Ford Motor Co.*,
   806 F.3d 1217 (9th Cir. 2015) .........................................................................30

*Daugherty v. Am. Honda Co.*,
   144 Cal. App. 4th 824 (2006) ..........................................................................25

*Davidson v. Kimberly-Clark Corp.*,
   889 F.3d 956 (9th Cir. 2018) .....................................................................17, 18

*De Havilland v. FX Networks, LLC*,
   21 Cal. App. 5th 845 (2018) .............................................................................34

*Edmundson v. Proctor & Gamble Co.*,
   537 F. App'x 708 (9th Cir. 2013)................................................................22, 31

*Elias v. Hewlett-Packard Co.*,
   903 F. Supp. 2d 843 (N.D. Cal. 2012)..........................................................18, 23

*Elias v. Hewlett-Packard Co.*,
   950 F. Supp. 2d 1123 (N.D. Cal. 2013) ............................................................27

*Emery v. Visa Int'l Serv. Ass'n*,
   95 Cal. App. 4th 952 (2002)........................................................................28, 29

*Express Gold Cash, Inc. v. Beyond 79, LLC*,
   No. 1:18-cv-00837-EAW, 2019 WL 4394567 (W.D.N.Y. Sep. 13, 2019) .......23

*Fowler v. Univ. of Phoenix, Inc.*,
   No. 18-cv-1544-WQH, 2019 WL 1746576 (S.D. Cal. Apr. 18, 2019).............23

*Franckowiak v. Scenario Cockram USA, Inc.*,
   No. 20-8569-JFW, 2020 WL 9071697 (C.D. Cal. Nov. 30, 2020)...................34

*GhostBed, Inc. v. Casper Sleep, Inc.*,
   No. 15-cv-62571-WPD, 2018 WL 2213002 (S.D. Fla. May 3, 2018)..............31

*Gibson v. Jaguar Land Rover N. Am., LLC*,
   No. 20-00769-CJC, 2020 WL 5492990 (C.D. Cal. Sept. 9, 2020) ...................33

*Gomez v. Jelly Belly Candy Co.*,
    No. 17-00575-CJC, 2017 WL 8941167 (C.D. Cal. Aug. 18, 2017) .................33

*Guzman v. Polaris Indus. Inc.*,
    49 F.4th 1308 (9th Cir. 2022)............................................................32

*Hall v. SeaWorld Ent., Inc.*,
    747 F. App'x 449 (9th Cir. 2018).......................................................26

*Hapraz v. Belkin Int'l, Inc.*,
    No. 09-5897-VBF, 2010 WL 11519319 (C.D. Cal. 2010) ...............................35

*Hilsley v. General Mills*,
    376 F. Supp. 3d 1043 (S.D. Cal. 2019) ...............................................17

*Hodsdon v. Mars, Inc.*,
    891 F.3d 857 (9th Cir. 2018)..................................................... passim

*Iezza v. Saxon Mortg. Servs., Inc.*,
    No.10-03634-DDP, 2010 WL 3834041 (C.D. Cal. Sept. 28, 2010) .................34

*In re Apple Inc. Device Performance Litig.*,
    347 F. Supp. 3d 434 (N.D. Cal. 2019)...............................................31

*In re ConAgra Foods Inc.*,
    908 F. Supp. 2d 1090 (C.D. Cal. 2012).............................................34

*In re Eventbrite, Inc. Secs. Litig.*,
    No. 5:18-cv-02019-EJD, 2020 WL 2042078 (N.D. Cal. Apr. 28, 2020)..........21

*In re Hydroxycut Mktg. & Sales Pracs. Litig.*,
    299 F.R.D. 648 (S.D. Cal. 2013)................................................20, 22

*In re Jamster Mktg. Litig.*,
    No. 05-cv-0819-JM, 2009 WL 1456632 (S.D. Cal. May 22, 2009) .................28

*In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*,
    No. 16-cv-06391-BLF, 2020 WL 7664461 (N.D. Cal. Dec. 24, 2020) ............20

*In re Toyota Motor Corp. Unintended Acceleration Mktg.,*
    *Sales Pracs. & Prods. Liab. Litig.*,
    826 F. Supp. 2d 1180 (C.D. Cal. 2011)............................................17

*Kavehrad v. Vizio, Inc.*,
    No. 8:21-cv-01868-JLS, 2022 WL 16859975 (C.D. Cal. Aug. 11, 2022).........27

*Kearns v. Ford Motor Co.*,
   567 F.3d 1120 (9th Cir. 2009)................................................................18, 31

*Klaehn v. Cali Bamboo LLC*,
   No. 21-55738, 2022 WL 1830685 (9th Cir. June 3, 2022) ...............................33

*Knowles v. Arris Int'l PLC*,
   No. 17-CV-01834-LHK, 2019 WL 3934781 (N.D. Cal. Aug. 20, 2019)..........25

*Kowalsky v. Hewlett-Packard Co.*,
   771 F. Supp. 2d 1156 (N.D. Cal 2011) ............................................................19

*Kwan v. SanMedica Int'l*,
   854 F.3d 1088 (9th Cir. 2017)..........................................................................30

*Kwisket Corp. v. Superior Ct.*,
   51 Cal. 4th 310 (2011)......................................................................................30

*Lectrodryer v. SeoulBank*,
   77 Cal. App. 4th 723 (2000) .............................................................................34

*LiMandri v. Judkins*,
   52 Cal. App. 4th 326 (1997) .......................................................................25, 27

*M&M Consulting Grp., LLC v. JP Morgan Bank, N, A.*,
   No. 20-01318-JVS, 2021 WL 71436 (C.D. Cal. Jan. 6, 2021) .........................34

*Madrigal v. Hint, Inc.*,
   No. 17-02095-VAP, 2017 WL 6940534 (C.D. Cal. Dec. 14, 2017).................32

*McLaughlin v. Homelight, Inc.*,
   No. 2:21-cv-05379-MCS, 2021 WL 5986913 (C.D. Cal. Sept. 17, 2021) ........22

*Melchior v. New Line Prods., Inc.*,
   106 Cal. App. 4th 779 (2003)...........................................................................34

*Meridian Project Sys. v. Hardin Constr. Co.*,
   404 F. Supp. 2d 1214 (E.D. Cal. 2005)............................................................18

*Milman v. FCA U.S., LLC*,
   No. 18-00686-JVS, 2018 WL 5867481 (C.D. Cal. Aug. 30, 2018).................27

*Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,
   494 F.3d 788 (9th Cir. 2007)......................................................................28, 29

*Persona Cosmetics, Inc. v. Societe Des Produits Nestle S.A.*,
  No. 2:21-cv-04644-JVS, 2021 WL 6103348 (C.D. Cal. Nov. 3, 2021) ............34

*Peterson v. Cellco P'ship*,
  164 Cal. App. 4th 1583 (2008) ........................................................................35

*Puri v. Khalsa*,
  674 F. App'x 679 (9th Cir. 2017) .....................................................................18

*Rothman v. Equinox Holdings, Inc.*,
  No. 2:20-cv-09760-CAS, 2021 WL 124682 (C.D. Cal. Jan. 13, 2021).............30

*Royal Holdings Techs. Corp. v. FLIR Sys., Inc.*,
  No. 2:20-cv-09015-SB, 2021 WL 945246 (C.D. Cal. Jan. 8, 2021).................23

*Rutledge v. Hewlett-Packard Co.*,
  238 Cal. App. 4th 1164 (2015) ........................................................................25

*Schwartz, v. Bai Brands, LLC*,
  No. 19-06249-SPG, 2022 WL 16935267 (C.D. Cal. Aug. 19, 2022) ................30

*Sonner v. Premier Nutrition Corp.*,
  971 F.3d 834 (9th Cir. 2020) .........................................................12, 18, 32, 33

*Spencer v. Cal. Bus. Bur., Inc.*,
  No. 16-cv-0399-AJB, 2016 WL 11779144 (S.D. Cal. Aug. 16, 2016) .............20

*Sud v. Costco Wholesale Corp.*,
  229 F. Supp. 3d 1075 (N.D. Cal. 2017) ...........................................................25

*Sud v. Costco Wholesale Corp.*,
  731 F. App'x 719 (9th Cir. 2019).....................................................................25

*Swartz v. KPMG LLP*,
  476 F.3d 756 (9th Cir. 2007) ....................................................................17, 21

*Tabler v. Panera LLC*,
  No. 19-cv-01646-LHK, 2019 WL 5579529 (N.D. Cal. Oct. 29, 2019)............33

*Tortilla Factory, LLC v. Health-Ade LLC*,
  No. 17-9090-MWF, 2018 WL 6174708 (C.D. Cal. July 13, 2018)..................29

*United States v. Corinthian Colleges*,
  655 F.3d 984 (9th Cir. 2011) ...........................................................................20

*Viggiano v. Hansen Nat. Corp.*,
    944 F. Supp. 2d 877 (C.D. Cal. 2013) ................................................................23

*Wilson v. Hewlett-Packard Co.*,
    668 F.3d 1136 (9th Cir. 2012) ...........................................................19, 21, 25

*Woodard v. Labrada*,
    No. 16-0189-JGB, 2017 WL 1018307 (C.D. Cal. Mar. 10, 2017) ...................29

*ZL Technologies, Inc. v. Gartner, Inc.*,
    709 F. Supp. 2d 789 (N.D. Cal. 2010) ................................................................24

**STATUTES**

Cal. Civ. Code § 17200 ...........................................................................................17

Cal. Civ. Code § 17500 ....................................................................................17, 19

Cal. Civ. Code § 1770 .............................................................................................17

**RULES**

Fed. R. Civ. P. 12(b)(6) .........................................................................................17

Fed. R. Civ. P. 9(b) ..........................................................................................passim

1    <u>**MEMORANDUM OF POINTS AND AUTHORITIES**</u>

2    **I.    INTRODUCTION**

This lawsuit arises out of revelations that the University of Southern California ("**USC**") allegedly submitted incomplete data about the selectivity of graduate programs offered at its education school, USC Rossier, to U.S. News & World Report ("**US News**") in a bid to achieve a higher ranking. That alleged misconduct has nothing to do with 2U, an education technology company that provides USC technology, marketing, and other services to support its online degree programs. Plaintiffs do not claim that 2U ever submitted survey responses or program data to US News as part of its ranking process for USC Rossier, or that 2U knew USC's rankings were allegedly based on misleading or incomplete data. Indeed, Plaintiffs' own Complaint makes clear that the US News survey process involves only US News and the participating schools. Nonetheless, Plaintiffs sued 2U alongside USC for a host of fraud-based claims based on advertising that allegedly misled students because it included USC Rossier's US News rankings or characterized USC Rossier as "top ranked." All of Plaintiffs' claims against 2U lack merit and should be dismissed.

Plaintiffs are three former students of USC Rossier online degree programs supported by 2U. The crux of their claims is that *USC* misled *US News* to achieve a higher ranking of USC Rossier. Plaintiffs say that after US News awarded and published high rankings for USC Rossier, "Defendants" misled them by reposting those rankings and referring to USC as "top ranked" in marketing materials. But Plaintiffs have not included a single well-pled allegation that *2U* played any role in obtaining the rankings, knew (or even should have known) that the rankings were purportedly based on incomplete data, or made any of the rankings-related statements they claim to have relied on, which are statements on the "main Rossier website" that they concede was maintained by USC and not 2U. Plaintiffs use improper group pleading to try to stretch USC's allegedly fraudulent interactions

with US News into false advertising claims against 2U, but they plead no facts whatsoever tying 2U to that conduct.

Plaintiffs' failure to plead that 2U knew (or even should have known) that the US News rankings were the product of alleged misconduct by USC is especially troubling here, where each of the statements was literally true: USC Rossier *was* top ranked by US News. Plaintiffs do not—and cannot—dispute that US News awarded USC Rossier the precise rankings that were included in the marketing materials. And to the extent Plaintiffs argue that the US News rankings *themselves* were the misstatements, that argument cannot make it out of the gate. Under Ninth Circuit precedent, a publication's ranking of colleges is a statement of opinion, not fact, that cannot form the basis of a false advertising claim. *See Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021). Publications like US News must rely on inherently subjective decision-making to determine which criteria to consider when ranking schools and how much weight to give them. *Id.* This flaw pervades the Complaint and is fatal to all of Plaintiffs' claims against 2U.

Plaintiffs' claims must now be dismissed for three independent reasons. *First*, Plaintiffs do not plead multiple essential elements of all of their misrepresentation-based claims—not plausibly, and certainly not with the particularity required by Rule 9(b). Most importantly, Plaintiffs do not properly allege (1) that 2U knew any of the statements were false, (2) that any of the statements were actionable, or (3) that 2U made any of the statements on which Plaintiffs claim to have relied. *Second*, all of Plaintiffs' claims are barred by *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), because their claims are equitable and Plaintiffs have not pled that they lack an adequate remedy at law. *Third*, Plaintiffs' unjust enrichment "claim" fails because it is not a cause of action under California law and Plaintiffs have not adequately pled that 2U retained a benefit at their expense.

## II.    BACKGROUND

### A.    2U's Relationship With USC

USC is a private, nonprofit research university located in Los Angeles. Complaint ("**Compl.**") ¶ 14 (Dkt. 1-1).  USC Rossier is USC's graduate school of education.  *Id.* ¶ 21.  USC Rossier offers both masters and doctoral degrees, including a Masters in Teaching ("**MAT**"), a Doctor of Philosophy ("**PhD**"), and a Doctor of Education ("**EdD**").  *See id.* ¶¶ 58, 68.  USC Rossier originally offered these programs exclusively on campus, but, like many other universities, USC Rossier now offers online degrees, including an online MAT and EdD.  *See id.* ¶ 25.

USC has sole responsibility for administering its in-person programs, but it relies on 2U for certain services related to the administration of its online MAT and EdD programs.  *See id.*  2U is an education technology company that helps colleges and universities build and deliver online degree and alternative credential programs. Ex. 1 at 1-4;[1] *see also* Compl. ¶ 23.  USC first contracted with 2U in 2008 to help support the online MAT program, and in 2015, 2U agreed to support the online EdD program as well.  Ex. 1 at 1; Compl. ¶ 25.

2U provides USC with an online learning platform, technology infrastructure support, and enrollment, marketing, and other student and faculty support services for USC Rossier's online MAT and EdD programs. Ex. 1 at 1-3.  But USC expressly retains ultimate control over any marketing materials and promotional strategies. For example, the parties' contract states that 2U must develop and execute "a written plan and appropriate marketing materials" for the online programs, but that this "plan and all materials related to the [online programs] shall be subject to USC's written approval prior to any use thereof."  *Id.* at 1(A).  The contract further states that "*USC* shall promote the [online programs] on the Rossier website (including,

---

[1] Each exhibit cited is attached to the concurrently filed Declaration of Melanie M. Blunschi, and is incorporated by reference into the Complaint and subject to judicial notice, as detailed in 2U's concurrently filed Request for Judicial Notice.

but not limited to, the homepage of that site) … in a manner comparable to the promotion of Rossier's in-classroom MAT programs." *Id.* at 2(A) (emphasis added).

## B.     The U.S. News & World Report Rankings

Each year, US News publishes rankings of the country's leading academic degree programs.  Participation in the US News rankings is voluntary, and not every accredited school participates each year.  To generate these rankings, US News solicits and "collect[s] statistical and reputation data directly from education schools."  Ex. 2 at 1.  Schools who wish to participate complete "a lengthy survey that seeks information for all education programs offered by the school, including post-baccalaureate, non-degree granting programs, master's programs, educational specialist degree programs, and doctoral programs."  Ex. 3 at 3.  USC submits data on its own behalf, including for the online programs 2U helps administer.  *See* Ex. 2 at 1 (noting that data feeding US News rankings comes "directly from education schools"); Ex. 3 at 5 ("US News required schools to verify the accuracy of their submissions").  Plaintiffs do not allege that 2U was ever involved in USC Rossier's submission of data to US News, much less that 2U itself submitted data on USC Rossier's behalf.  *See* Ex. 1 at 1 (detailing 2U's role in administering the online programs, with no mention of the rankings process); Ex. 3 at 1 (USC had exclusive responsibility for US News rankings submissions).

Each US News ranking is based on different factors called "indicators," which vary from year to year.  For example, the 2023 "Best Education School" ranking considered eleven different indicators, including "selectivity" criteria such as test scores and acceptance rates, "faculty resource" information such as student-teacher ratios, "quality" metrics that included reputational assessments from peer institutions and educators, and "research activity" measures that assessed a university's research spend.  Ex. 2 at 1.

USC Rossier participated in the 2009 through 2021 editions of US News's "Best Education School" rankings.  *See* Compl. ¶ 57.  In 2010, US News ranked

1   USC Rossier #22.  *Id.*  And from 2017 to 2021, US News ranked USC Rossier #15

2   (2017), #10 (2018), #12 (2019), #12 (2020), and #11 (2021).  *Id.*[2]

3   **C.    USC's Counsel Investigates USC Rossier's US News Rankings**

4       In January 2022, USC's Office of the General Counsel learned of potential

5   inaccuracies in USC Rossier's survey submissions to US News.  Ex. 3 at 3; *see also*

6   Compl. ¶ 49.  USC initiated an internal review and retained the Jones Day law firm

7   to investigate.  Ex. 3 at 3.  USC asked Jones Day to examine "whether [USC]

8   misreported information about the 'selectivity' of its doctoral programs by reporting

9   data on only one of its doctoral programs (its more selective PhD program) and

10  omitting data on its other doctoral programs (its less selective EdD programs)," and,

11  if so, "whether there was a persuasive justification for doing so."  *Id.* at 1.

12      In April 2022, the firm issued a report (the "**Jones Day Report**"), concluding

13  that "[f]rom at least 2013 to 2021, the School misreported data to US News about

14  the selectivity of its doctoral programs."  *Id.*  More specifically, Jones Day found

15  that USC had failed to "report [selectivity] data on its EdD programs," instead

16  reporting "data on only its PhD program, which made the School's doctoral

17  programs appear to be more selective than they actually were."  *Id.*  Jones Day also

18  found that USC "did not typically include data relating to online EdD students in US

19  News surveys" at all, which it suggested "was a deliberate decision on the part of

20  [the Dean]."  *Id.* at 20.  Jones Day concluded that "the explanations provided … by

21  the responsible leaders of the School do not provide a persuasive justification for not

22  reporting EdD data."  *Id.* at 3.

23      Jones Day assigned full responsibility for this course of conduct to USC: "The

24  ultimate decision-making authority and responsibility for the School's survey

25  submissions rested with the School's dean, who reviewed and approved the

26

27

28  [2] When USC Rossier participated in the program-specific "Best Online Master's in
    Education" rankings in 2013, US News ranked its online MAT program #44.
    Compl. ¶ 68.

submissions before they were transmitted to US News." *Id.*  The Jones Day Report does not mention 2U.

### D.  Plaintiffs' Allegations

On December 20, 2022, Plaintiffs Iola Favell, Sue Zarnowski, and Mariah Cummings, former online USC Rossier students, filed suit against USC and 2U on behalf of themselves and other former USC Rossier online students.  Plaintiffs allege that "Defendants engaged in a two-part scheme" to (1) "submit[] inaccurate, incomplete data to US News to increase USC Rossier's Best Education Schools ranking," and (2) "use[] the[] fraudulently-procured Best Education Schools ranking to market the online degrees, all the while withholding data from those online degrees that would have affected their rankings."  Compl. ¶ 50.

Nearly all of Plaintiffs' allegations are made broadly about "Defendants," without identifying any specific conduct by 2U.  As for 2U in particular, Plaintiffs allege that 2U "acted in concert with" USC to "aggressively advertise[] USC Rossier's fraudulent rankings to grow enrollment in the school's online programs." *Id.* ¶ 2; *see also id.* ¶ 75 ("USC carried out this [advertising] campaign, both on its own, and through its partner and agent, 2U").  Plaintiffs assert that 2U "knew" that USC posted advertisements touting the USC Rossier rankings and that 2U was "consulted" on those advertisements. *Id.* ¶¶ 82-83.  According to Plaintiffs, the supposedly misleading rankings were primarily promoted on two websites—USC's "main Rossier website" (rossier.usc.edu) (the "**USC Rossier Website**") and the Rossier Online Webpage "specific to the online degrees" (rossieronline.usc.edu) (the "**USC Rossier Online Webpage**"). *Id.* ¶¶ 45, 82, 84.  Plaintiffs also allege that 2U used "paid online advertising to expand the reach of USC Rossier's rankings to more prospective students." *Id.* ¶ 77.  Plaintiffs then claim that they would not have "paid tuition"—or would have paid "substantially less"—but for "USC Rossier's fraudulently obtained US News ranking." *Id.* ¶ 10.

Plaintiffs bring equitable claims under California's False Advertising Law ("**FAL**"), Cal. Civ. Code § 17500; Consumers Legal Remedies Act ("**CLRA**"), Cal. Civ. Code § 1770; and Unfair Competition Law ("**UCL**"), Cal. Civ. Code § 17200; as well as for unjust enrichment. *See* Compl. ¶¶ 147-78. Each claim is based on Defendants' allegedly false and deceptive advertising promoting US News's high ranking of USC Rossier. *See id.* ¶ 148 (FAL); *id.* ¶ 156 (UCL); *id.* ¶ 165 (CLRA); *id.* ¶ 170 (unjust enrichment). Plaintiffs also say that they intend to amend their Complaint to add a claim for damages pursuant to the CLRA. *Id.* ¶ 167.

## III.   LEGAL STANDARDS

A court must dismiss claims under Rule 12(b)(6) where a plaintiff fails to allege "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Plaintiffs' allegations are taken as true on a Rule 12(b)(6) motion, but a court need not accept "legal conclusion[s] couched as [] factual allegation[s]," and "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citation omitted).

Rule 9(b) further requires that fraud-based claims "state with particularity the circumstances constituting [the] fraud." Fed. R. Civ. P. 9(b). Under that standard, Plaintiffs "must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Davidson v. Kimberly-Clark Corp.*, 889 F.3d 956, 964 (9th Cir. 2018) (citation omitted). Group pleading is improper; instead, Rule 9(b) requires that a plaintiff "inform each defendant separately of the allegations surrounding his alleged participation in the fraud." *Swartz v. KPMG LLP*, 476 F.3d 756, 764-65 (9th Cir. 2007) (citation omitted); *see also Hilsley v. General Mills*, 376 F. Supp. 3d 1043, 1051 (S.D. Cal. 2019) (dismissing claims against advertiser defendants where plaintiffs did not explain their participation in the misconduct); *In re Toyota Motor Corp. Unintended Acceleration Mktg., Sales Pracs. & Prods. Liab.*

*Litig.*, 826 F. Supp. 2d 1180, 1201 (C.D. Cal. 2011) (dismissing complaint that "impermissibly ascrib[ed] conduct to … 'Defendants' generally").

Here, all four of Plaintiffs' claims sound in fraud and therefore must meet Rule 9(b)'s heightened bar. Plaintiffs themselves admit that the heart of their case is *fraud*. *See, e.g.*, Compl. ¶ 2 ("This Complaint centers on that rankings fraud."); *id.* ("[F]raud is exactly what happened here."); *id.* ¶ 95 ("Defendants' fraudulent scheme to climb the US News rankings has benefited them tremendously[.]"). Indeed, each of Plaintiffs' claims is ultimately based on alleged "misrepresentations" about USC Rossier's "true" US News ranking, and misrepresentations are a "species of fraud." *Meridian Project Sys. v. Hardin Constr. Co.*, 404 F. Supp. 2d 1214, 1219 (E.D. Cal. 2005); *see Davidson*, 889 F.3d at 964 (holding that FAL, UCL, and CLRA claims based on misrepresentations were all grounded in fraud); *Puri v. Khalsa*, 674 F. App'x 679, 690 (9th Cir. 2017) (dismissing an unjust enrichment claim based on fraudulent conduct for failure to satisfy Rule 9(b)). And because each of Plaintiffs' claims is based on the same underlying fraud-based conduct, each may be considered—and disposed of—together. *See, e.g.*, *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1125 (9th Cir. 2009) (considering misrepresentation-based UCL and CLRA claims together and affirming dismissal of both for failure to meet Rule 9(b)); *Elias v. Hewlett-Packard Co.*, 903 F. Supp. 2d 843, 854 (N.D. Cal. 2012) ("[C]ourts often analyze these three statutes [the FAL, UCL, and CLRA] together.").

## IV.   ARGUMENT

All of Plaintiffs' claims against 2U must be dismissed. *First*, Plaintiffs fail to plead essential elements of their FAL, UCL, and CLRA claims. *Second*, *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020), bars all of Plaintiffs' claims because they are for equitable relief, and yet Plaintiffs have not pled that legal remedies would be inadequate. *Finally*, Plaintiffs' unjust enrichment claim additionally fails because unjust enrichment is not a cause of action in California, and, in any case, Plaintiffs have not stated a claim for restitution.

### A.   Plaintiffs Fail To Properly Allege Their Misrepresentation-Based Claims Against 2U

Plaintiffs' misrepresentation-based allegations under the FAL, UCL, and CLRA do not state a claim under Rule 8's plausibility standard, much less under the heightened bar of Rule 9(b).  Plaintiffs claim "Defendants" posted the "falsified US News ranking" and made statements that USC Rossier was "top-ranked" on: (1) the main homepage of the USC Rossier Website, rossier.usc.edu, Compl. ¶¶ 79, 82-84, 106, 117, 130; and (2) the Rossier Online Webpage specific to the online degrees, rossieronline.usc.edu, *id.* ¶ 84.  They also claim that 2U generated interest in USC Rossier's online programs using "paid search result advertisements" on Google, "targeted advertising on Facebook," and "additional advertising" on unrelated sites "via a display advertising network."  *Id.* ¶¶ 115-116, 118, 131-132.

None of these allegations states a claim against 2U, because none is supported by factual allegations that establish the required elements of these misrepresentation-based claims.  Most importantly, Plaintiffs fail to plead: (1) that 2U knew that the statements were false, (2) that the statements are actionable, or (3) that 2U made any of the statements on which Plaintiffs allegedly relied.  2U has nothing to do with USC's alleged misconduct, and it should never have been made part of this case.

#### 1.   Plaintiffs Have Not Alleged 2U Knew Any Of The Statements Were False

All of Plaintiffs' misrepresentation-based claims require proof that 2U *knew* the statements were false.  The UCL and CLRA require proof that the defendant has actual knowledge of falsity.  *See, e.g.*, *Wilson v. Hewlett-Packard Co.*, 668 F.3d 1136, 1145 (9th Cir. 2012); *Kowalsky v. Hewlett-Packard Co.*, 771 F. Supp. 2d 1156, 1160-63 (N.D. Cal 2011).  The FAL requires proof of constructive knowledge, which allows liability only if the plaintiff can show that the facts "should be known" by the defendant through the "exercise of reasonable care."  Cal. Civ. Code § 17500.  Here, Plaintiffs have failed to plead knowledge under either test.  Simply put, 2U

had no actual or constructive knowledge that USC Rossier's rankings were allegedly based on incomplete data because *USC*—not 2U—submits survey responses and program data to US News.  Plaintiffs cannot plead around this problem by lumping "Defendants" together using impermissible group pleading.

Although knowledge may be averred "generally" under Rule 9(b), a plaintiff still must allege "sufficient facts to support … or render plausible" an inference of knowledge as to each defendant.  *United States v. Corinthian Colleges*, 655 F.3d 984, 997 (9th Cir. 2011); *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 659 (S.D. Cal. 2013) (citation omitted) (dismissing fraud claims because plaintiff did not "plead circumstances providing a factual basis for scienter for each defendant").  Plaintiffs have entirely failed to do so here.  Plaintiffs simply assert that "Defendants knew the data submissions [to US News] were fraudulent" and therefore "knew or should have known that the representations were untrue or misleading."  Compl. ¶¶ 141, 151.  But these group allegations do not specify that *2U* had that knowledge—or how and when it was acquired.  They are too speculative and conclusory to meet Plaintiffs' burden.  *See, e.g.*, *In re Samsung Galaxy Smartphone Mktg. & Sales Pracs. Litig.*, No. 16-cv-06391-BLF, 2020 WL 7664461, at *8 (N.D. Cal. Dec. 24, 2020) ("merely conclusory" allegations of knowledge insufficient); *Spencer v. Cal. Bus. Bur., Inc.*, No. 16-cv-0399-AJB, 2016 WL 11779144, at *6 (S.D. Cal. Aug. 16, 2016) (rejecting conclusory allegations that defendant "knew or should have known").

Plaintiffs' speculative group allegations, in any event, are not even plausible as applied to 2U.  Plaintiffs have not alleged that *2U* submitted survey responses or program data to US News, such that 2U could have been on notice that USC had submitted allegedly incomplete responses to US News's questions.  To the contrary, the Complaint and the documents it incorporates underscore the lack of *any* connection between 2U and this supposed fraud.

For example, Plaintiffs' allegations of ranking-related fraud rely exclusively on the Jones Day Report. *See* Compl. ¶¶ 1, 49, 58, 60, 67, 69-73. But the Jones Day Report makes clear that *USC* submitted data to US News, and it states that "[t]he ultimate decision-making authority and responsibility for the School's survey submissions [to US News] rested with the School's dean." Ex. 3 at 1; *see also id.* at 7 ("Dean 1 reviewed and approved the School of Education's 2001 through 2020 survey submissions to US News," and "Dean 1 directed the exclusion of EdD from selectivity metrics"); *id.* at 10 ("Dean 1 directed School Administrator 1 and the Rankings Staff Member to continue to exclude EdD data from responses"); *id.* at 20 (noting Dean 1's "decision" not to submit online program data); *see, e.g.*, *In re Eventbrite, Inc. Secs. Litig.*, No. 5:18-cv-02019-EJD, 2020 WL 2042078, at *7 (N.D. Cal. Apr. 28, 2020) (documents incorporated by reference may be considered on motion to dismiss). The Jones Day Report *never* references 2U and certainly does not suggest 2U knew (or should have known) of USC's alleged misconduct. The contract between USC and 2U, moreover, says nothing about any ranking process, and does not provide 2U with authority to submit data to US News on USC's behalf or even review USC's submissions. *See* Ex. 1.

The rest of Plaintiffs' allegations likewise confirm that USC alone was responsible for submitting data to US News. *See, e.g.*, Compl. ¶ 19 ("USC … submitted data" to US News); *id.* ¶ 67 ("USC [did] not provid[e] US News with any selectivity data from its online programs"); *id.* ¶ 71 ("[Dean 2] again authorized the submission of survey data to US News that excluded EdD data"). Indeed, Plaintiffs do not allege that 2U even had access to information from which it could or should have discovered issues with USC's submissions. *See, e.g.*, *Wilson*, 668 F.3d at 1147 (declining to credit allegations that defendant was "on notice" of problems through its "access to aggregate data").

That 2U played no role in the alleged fraud is fatal to Plaintiffs' claims under any pleading standard, and especially Rule 9(b). *See, e.g.*, *Swartz*, 476 F.3d at 764-

65 (citation omitted) (plaintiff must "inform each defendant separately of the allegations surrounding his alleged participation in the fraud").  Because Plaintiffs have not pled any facts from which to plausibly infer that 2U knew of the alleged issues with the US News rankings, its statutory claims against 2U must be dismissed. *See, e.g.*, *In re Hydroxycut Mktg. & Sales Pracs.*, 299 F.R.D. at 659.

2.  <u>Plaintiffs Do Not Allege Any Actionable Misstatements Or Omissions</u>

Plaintiffs have not pled a single actionable misstatement or omission, which is required for each of Plaintiffs' misrepresentation-based claims.  *See Hodsdon v. Mars, Inc.*, 891 F.3d 857, 865 (9th Cir. 2018) (affirming dismissal of FAL, UCL, and CLRA claims for failure to plead an actionable misstatement or omission).  Only "specific factual assertion[s]" that are capable of being proven false are actionable. *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1140 (C.D. Cal. 2005); *see also Edmundson v. Proctor & Gamble Co.*, 537 F. App'x 708, 709 (9th Cir. 2013) (dismissing false advertising-based UCL and CLRA claims).  Plaintiffs allege two categories of purported misrepresentations: (1) statements that USC Rossier was "top-ranked," *see, e.g.*, Compl. ¶¶ 82, 83; and (2) statements that reposted the numerical US News rank USC Rossier held at the time of the advertising, *see, e.g.*, *id.* ¶ 83.   Neither states a claim, whether considered under an affirmative misrepresentation theory or as the basis of Plaintiffs' related omissions theory.

a.   Plaintiffs' Affirmative Misstatement Theory Fails

Affirmative statements that USC Rossier was "top-ranked"—without reference to any objective basis for that claim—are nonactionable "puffery."  *See, e.g.*,  *Edmundson*, 537 F. App'x at 709; *McLaughlin v. Homelight, Inc.*, No. 2:21-cv-05379-MCS, 2021 WL 5986913, at *4 (C.D. Cal. Sept. 17, 2021) (holding that a list of "top" real estate agents a website compiled using both subjective and objective measures was "nonactionable puffery too nebulous and ambiguous to support a claim of false advertising") (collecting cases where "top"-based statements

constituted puffery).  "Advertising which merely states in general terms that one product is superior is not actionable" because "consumer reliance" is induced by "specific rather than general assertions."  *Viggiano v. Hansen Nat. Corp.*, 944 F. Supp. 2d 877, 894 (C.D. Cal. 2013).  Here, statements that USC Rossier was "top-ranked" are too general to be actionable because they say nothing about the school's "specific characteristics," and ultimately are no "more weighty than an advertising slogan." *Elias*, 903 F. Supp. 2d at 855 (citation omitted); *see also Fowler v. Univ. of Phoenix, Inc.*, No. 18-cv-1544-WQH, 2019 WL 1746576, at *12 (S.D. Cal. Apr. 18, 2019) (statements regarding the "quality of education" are mere puffery).

Advertising statements noting USC Rossier's numerical US News ranking are not actionable either.  Plaintiffs claim that USC Rossier's US News rankings were inflated as a result of USC's incomplete survey submissions, and that "Defendants" committed fraud by including those rankings in their marketing materials.  *See, e.g.*, Compl. ¶ 84.  But each statement noting USC Rossier's numerical US News ranking was *literally true*, and 2U cannot be held liable for "presenting accurately [US News's] allegedly inaccurate conclusions" about USC Rossier.  *Biolase, Inc. v. Fotona Proizvodnja Optoelektronskih Naprav D.D.*, No. 14-0248-AG, 2014 WL 12579802, at *4 (C.D. Cal. June 4, 2014) (citation omitted).  Although Plaintiffs take issue with the data underlying the US News rankings, it is entirely undisputed that US News *did* give USC Rossier the precise ranking advertised, which provided 2U with a factual basis for any marketing materials it developed containing those rankings.  *See, e.g.*, *Royal Holdings Techs. Corp. v. FLIR Sys., Inc.*, No. 2:20-cv-09015-SB, 2021 WL 945246, at *6 (C.D. Cal. Jan. 8, 2021) (finding no liability for alleged misuse of a truthful statement).  Simply reposting the US News rankings, without more, is neither false nor a misrepresentation of US News's subjective conclusions about USC Rossier.  *See Express Gold Cash, Inc. v. Beyond 79, LLC*, No. 1:18-cv-00837-EAW, 2019 WL 4394567, at *6 (W.D.N.Y. Sep. 13, 2019)

(holding that statements that defendant was "ranked #1 by NBC's Today Show" could not form basis of false advertising claim where literally true).

To the extent Plaintiffs argue that the US News rankings *themselves* were the false advertising, that fails too.  Setting aside that Defendants did not make the rankings (and that 2U did not contribute to them in any way), US News's rankings are statements of opinion, not fact.  *See Ariix*, 985 F.3d at 1121.  In *Ariix*, the Ninth Circuit explained that although "publications that rank colleges or law schools purportedly rely on objective criteria (*e.g.*, acceptance rates, test scores, class size, endowment)," selecting those criteria "involves subjective decision-making."  *Id.* The product thus is an "unquantifiable assertion," which is a "classic" example of a "non-actionable opinion[]" that cannot form the basis for a fraud claim.  *Id.* (citation omitted).  So too here.  US News uses "subjective decision-making" to form its Best Education School rankings.  *Id.*  But that "subjective decision-making," which encompasses the decision whether to weigh data from online or EdD programs in its selectivity indicators, renders its rankings an "unquantifiable assertion[]" that cannot give rise to a fraud claim.  *Id.*; *see also ZL Techs., Inc. v. Gartner, Inc.*, 709 F. Supp. 2d 789, 796-801 (N.D. Cal. 2010) (ranking software companies was a non-actionable opinion, and defendant had no duty to disclose the basis for the rankings).

### b.      Plaintiffs' Omissions Theory Fails

Plaintiffs half-heartedly attempt to recast their affirmative-misstatement claim under an omissions theory, briefly asserting that Defendants are liable for failing to disclose three things on USC's websites: USC Rossier's "lower (or non-existent) position in US News's rankings of online master's degrees in education," Compl. ¶ 85; "that the data used to obtain the US News ranking excluded EdD students, both online and in person," *id.* ¶ 86; and "things like selectivity information, or average GRE scores," *id.* ¶ 86.  This omissions theory is equally meritless.

In the absence of an affirmative and contrary misrepresentation, Plaintiffs must plead with particularity that the defendant omitted a "fact the defendant was

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

1    obliged to disclose." *Hodsdon*, 891 F.3d at 861 (citation omitted). The duty to

2    disclose in the absence of a contrary affirmative misrepresentation is narrow:

3    "California courts have generally rejected a broad obligation to disclose." *Wilson*,

4    668 F.3d at 1141 (citing *Daugherty v. Am. Honda Co.*, 144 Cal. App. 4th 824, 835

5    (2006)). That duty extends only to facts that are "material" and relate to the "central

6    functionality" of the product or service at issue. *Id.* at 863. In addition, the defendant

7    must bear a special responsibility to disclose the information under the factors set

8    forth in *LiMandri v. Judkins*, 52 Cal. App. 4th 326 (1997). *See, e.g.*, *Sud v. Costco

9    Wholesale Corp.*, 731 F. App'x 719, 720 (9th Cir. 2019) (requiring that a plaintiff

10   allege central functionality and a *LiMandri* factor). Here, Plaintiffs' omission theory

11   fails because there is no duty to disclose information about USC Rossier's US News

12   ranking or the selectivity of the online programs, for two reasons: (1) these purported

13   omissions do not relate to the "central functionality" of a USC education, and (2) 2U

14   had no responsibility to disclose this information under *LiMandri*.

15         *First*, Plaintiffs nowhere allege that the purported omissions were so

16   important that they affected the "central functionality" of their USC education.

17   Under this test, a company's failure to disclose information about its product or

18   service is not actionable unless the omitted information rendered the product or

19   service "incapable of use." *Hodsdon*, 891 F.3d at 864 (explaining "central

20   functionality" doctrine under *Collins v. eMachines, Inc.*, 202 Cal. App. 4th 249

21   (2011), and *Rutledge v. Hewlett-Packard Co.*, 238 Cal. App. 4th 1164 (2015)). This

22   bright-line rule is "sound policy," given the "difficulty of anticipating exactly what

23   information some customers might find material to their purchasing decisions," *Sud

24   v. Costco Wholesale Corp.*, 229 F. Supp. 3d 1075, 1086 (N.D. Cal. 2017), and the

25   fact that "courts are not suited to determine which [information] must occupy the

26   limited surface area" of a brochure or other marketing material, *Dana v. Hershey

27   Co.*, 180 F. Supp. 3d 652, 665 (N.D. Cal. 2016). California law thus requires that

28   the omitted information "obliterate" the function of the product or service such that

1   it becomes "unusable" in order to impose a duty to disclose it.  *Ahern v. Apple Inc.*,

2   411 F. Supp. 3d 541, 568 (N.D. Cal. 2019); *see also Knowles v. Arris Int'l PLC*, No.

3   17-CV-01834-LHK, 2019 WL 3934781, at *16 (N.D. Cal. Aug. 20, 2019) (finding

4   no centrality where latency defects slowed down performance but did not render a

5   modem unusable).

6         Here, as discussed, Plaintiffs fault USC and 2U for failing to disclose USC

7   Rossier's "lower (or non-existent) position in US News's rankings of online master's

8   degrees in education," Compl. ¶ 85; "that the data used to obtain the US News

9   ranking excluded EdD students," *id.* ¶ 86; and "things like selectivity information,

10  or average GRE scores," *id.* ¶ 86.  But none of this information has any bearing on

11  the education and graduate degrees that Plaintiffs actually received.  Plaintiffs'

12  "subjective preferences" about how US News, a third party, ranked USC Rossier

13  (based on its own subjective assessment of selectivity data) simply did not affect the

14  educational instruction they actually received, let alone render those services

15  "incapable of use." *Hodsdon*, 891 F.3d at 864; *Hall v. SeaWorld Ent., Inc.,* 747 F.

16  App'x 449, 451 (9th Cir. 2018) (affirming no duty to disclose information on orca

17  treatment where it did not relate to the central function of Seaworld's services, but

18  instead reflected "Plaintiffs 'subjective preferences'" on how orcas were treated).

19  Nor did Plaintiffs' subjective preferences about USC Rossier's *voluntary*

20  participation in different US News rankings (or ranking inputs like admission rates

21  or average GRE scores of other students in particular years) in any way affect the

22  education Plaintiffs received or the degrees they earned.  Plaintiffs' omission

23  theories do not meet the high "central functionality" bar and accordingly fail.

24        *Second*, and independently, 2U had no duty to disclose any of this information

25  because Plaintiffs fail to adequately allege any *LiMandri* factor.  Under California

26  law, a duty to disclose material facts relating to the central function of a good or

27  service arises only in four instances: "(1) when the defendant is the plaintiff's

28  fiduciary; (2) when the defendant has exclusive knowledge of material facts not

known or reasonably accessible to the plaintiff; (3) when the defendant actively conceals a material fact from the plaintiff; and (4) when the defendant makes partial representations that are misleading because some other material fact has not been disclosed." *Hodsdon*, 891 F.3d at 862 (citing *LiMandri*, 52 Cal. App. 4th at 336).

Plaintiffs do not allege that any of these four circumstances are present here. Plaintiffs nowhere allege that 2U was their fiduciary (nor could they). Plaintiffs also do not (and cannot) allege that 2U had knowledge—let alone "exclusive knowledge"—of either (1) the fact that USC Rossier was not included in US News's specialized "Best Online Master's in Education" ranking for many years (which could have been ascertained by visiting US News's website); or (2) the data behind USC Rossier's US News rankings (which USC compiled and submitted). *Id.*; *see Elias v. Hewlett-Packard Co.*, 950 F. Supp. 2d 1123, 1138-39 (N.D. Cal. 2013) (dismissing claims that defendant concealed or suppressed information it did not know). As for the allegedly omitted "selectivity information" on the online programs, that also fails. Compl. ¶ 86. Plaintiffs' own allegations that *USC* should have submitted selectivity data about the online programs to US News, *see* Compl. ¶ 6, belies any argument that *2U* had "exclusive knowledge" of that data. Moreover, Plaintiffs have not alleged a single fact to support an inference that 2U actively concealed this information. *See Milman v. FCA U.S., LLC*, No. 18-00686-JVS, 2018 WL 5867481, at *11 (C.D. Cal. Aug. 30, 2018) (dismissing omission-based claims centered on "mere nondisclosure"). Finally, because Plaintiffs have failed to plead that any affirmative representation by 2U is actionable, they "cannot proceed on the basis of misleading partial representations." *Kavehrad v. Vizio, Inc.*, No. 8:21-cv-01868-JLS, 2022 WL 16859975, at *6-7 (C.D. Cal. Aug. 11, 2022) (dismissing omissions claims where affirmative representations were puffery). Without a duty

1    to disclose, Plaintiffs' omissions-based theory against 2U must be rejected.[3]

2            3.      Plaintiffs Fail To Allege That 2U Made An Actionable
3                    Misstatement Or Omission On Which They Relied

4            Plaintiffs' claims against 2U also fail for multiple additional reasons.  2U did

5    not make any of the allegedly misleading statements on the main USC Rossier

6    Website.  2U also did not exert "unbridled control" over the statements on USC

7    Rossier's *Online* Webpage—and, in any event, Plaintiffs did not allege they relied

8    on statements made there.  Finally, 2U's commonplace marketing techniques are not

9    false or misleading statements of fact, and Plaintiffs do not identify with particularity

10   any misleading advertisement that resulted from those techniques.

11           *a.*     Plaintiffs Have Not Alleged That 2U Made Any
12                    Statements On The USC Rossier Website

13          A defendant may not be held liable for false advertising and unfair

14   competition claims "absent its '*personal participation* in the unlawful practices and

15   *unbridled control* over th[ose] practices.'"  *Perfect 10, Inc. v. Visa Int'l Serv. Ass'n*,

16   494 F.3d 788, 808-09 (9th Cir. 2007) (emphasis added) (quoting *Emery v. Visa Int'l*

17   *Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002)) (dismissing UCL and FAL claims);

18   *see also In re Jamster Mktg. Litig.*, No. 05-cv-0819-JM, 2009 WL 1456632, at *8

19   (S.D. Cal. May 22, 2009) (same for CLRA).  As California courts have made clear,

20   "there is no duty to investigate the truth of statements made by others."  *Emery*, 95

21   Cal. App. 4th at 964.  Rather, the defendant must have "exercised [] control over the

22   preparation or distribution of" a statement to be liable for a misrepresentation

23   contained within that statement.  *Id.* at 960.

24          Here, Plaintiffs do not allege that 2U made any of the statements on the USC

---

[3] Plaintiffs briefly suggest that 2U advisors failed to disclose their affiliation with
2U, *see, e.g.*, Compl. ¶¶ 47, 119, but do not allege either that 2U advisors
affirmatively represented their affiliation or had a duty to disclose more.  And while
Plaintiffs claim that *they* made rankings-related statements to their advisors, they do
not allege that the *advisors* made any such statements or had a duty to disclose
anything about third-party rankings of USC Rossier.  *See Hodsdon*, 891 F.3d at 862.

Rossier Website. On the contrary, they expressly acknowledge the opposite, declaring that "*USC* maintained the main Rossier website, rossier.usc.edu." Compl. ¶ 45 (emphasis added); *see also* Ex. 1 at 2(A). That is fatal to their claims against 2U based on these webpages. *See, e.g.*, *Emery*, 95 Cal. App. 4th at 960.[4]

To be sure, Plaintiffs assert that USC displayed rankings on the USC Rossier Website "with 2U's consultation," Compl. ¶ 83, but that is not enough to state a claim against 2U. Mere "consultation"—without "unbridled control"—is plainly insufficient for liability. *Perfect 10*, 494 F.3d at 808-09 (citation omitted); *see also Tortilla Factory, LLC v. Health-Ade LLC*, No. 17-9090-MWF, 2018 WL 6174708, at *11 (C.D. Cal. July 13, 2018) (same). Indeed, courts have recognized that a general agreement to "collaborate on a website" is not enough to allege "direct involvement" in curating its content, such that a defendant would be liable for any misrepresentations made there. *Woodard v. Labrada*, No. 16-0189-JGB, 2017 WL 1018307, at *12 (C.D. Cal. Mar. 10, 2017).

> ### b.   Plaintiffs' Allegations Based On The USC Rossier Online Webpage Do Not State A Claim

Plaintiffs also allege that 2U and USC shared responsibility for a *different* website specific to the online degrees, the USC Rossier Online Webpage located at rossieronline.usc.edu, and that *this* webpage fraudulently included USC Rossier's numerical US News rankings, as well as statements that the school was "top-ranked." Compl. ¶¶ 45, 84, 86. These claims fare no better.

As noted, California consumer protection law imposes liability for false or misleading statements only when the defendant exercises "unbridled control" over the content of those statements. *Perfect 10*, 494 F.3d at 808 (quoting *Emery*, 95 Cal. App. 4th at 960). Here, though, *USC* exercised ultimate control over the USC Rossier Online Webpage, not 2U. As the contract between 2U and USC made clear,

---

[4] The same is true for any claims based on news releases "USC published" and "authored," Compl. ¶ 79, and tweets posted by USC or its Dean, *id.* ¶¶ 80-81, which, in any event, Plaintiffs do not claim to have seen or relied on, *see infra*.

1   *all* of 2U's marketing materials pertaining to the online programs, including

2   materials that ended up on the USC Rossier Online Webpage, were "subject to

3   *USC's* written approval prior to any use."  Ex. 1 at 1(A) (emphasis added).

4        In any event, Plaintiffs have not pled an actionable claim based on the USC

5   Rossier Online Webpage because Plaintiffs do not allege that they relied on any false

6   or misleading statements made on that webpage.  Reliance is a required element for

7   Plaintiffs' FAL, UCL, and CLRA claims based on fraud or misrepresentation.[5]

8   *Kwan v. SanMedica Int'l*, 854 F.3d 1088, 1095 (9th Cir. 2017); *see also Kwisket*

9   *Corp. v. Superior Ct.*, 51 Cal. 4th 310, 322 (2011) (same).  Reliance "is proved by

10  showing that [the] defendant's misrepresentation is an 'immediate cause' of the

11  plaintiff's conduct," which means that "the plaintiff 'in all reasonable probability'

12  would not have engaged in the injury-producing conduct" if the misrepresentation

13  had not been made.  *Kwan*, 854 F.3d at 1095 (citations omitted).

14       Here, Plaintiffs do not allege that they saw—let alone relied on—a single

15  representation made on the USC Rossier Online Webpage.  Indeed, Plaintiffs make

16  clear that the "[s]pecific misrepresentations and omissions on which the[y] relied are

17  set forth" in paragraphs 105-132 of the Complaint, Compl. ¶ 150, yet those

18  paragraphs never mention any statement that appeared on the USC Rossier Online

19  Webpage.  Needless to say, a plaintiff cannot rely on an alleged misrepresentation

20  to which she was not exposed.  *See, e.g.*, *Schwartz, v. Bai Brands, LLC*, No. 19-

21  06249-SPG, 2022 WL 16935267, at *7 (C.D. Cal. Aug. 19, 2022) (dismissing FAL,

22  UCL, and CLRA claims where the plaintiff did not allege that they saw the relevant

23  advertisements prior to purchase).[6]

24
---
25  [5] Plaintiffs' lack of reliance is also fatal to Plaintiffs' statutory standing under the
    FAL, UCL, and CLRA.  *See Rothman v. Equinox Holdings, Inc.*, No. 2:20-cv-09760-
    CAS, 2021 WL 124682, at *4-6 (C.D. Cal. Jan. 13, 2021).

26
27  [6] Plaintiffs fail to plead reliance on the purported omissions for the same reason.  To
    prove reliance, Plaintiffs must plead that "had the omitted information been
    disclosed, [they] would have been aware of it and behaved differently."  *Daniel v.*
28  *Ford Motor Co.*, 806 F.3d 1217, 1225 (9th Cir. 2015) (citation omitted).  But because

     *c.*  Plaintiffs' Allegations About 2U's Use Of Search Engine Optimization Do Not State A Claim

Finally, Plaintiffs do not state a claim based on 2U's search-engine optimization techniques, such as purchasing Google search terms and targeted advertisements on Facebook, and disseminating advertisements on other sites via a display advertising network. Compl. ¶¶ 115-16, 118, 131-32. The first element of each of Plaintiffs' misrepresentation-based claims is a false or misleading *statement* of fact, *see, e.g., Edmundson*, 537 F. App'x at 709, but search engine techniques and marketing strategies do not constitute "statements" in any sense of the term. *See, e.g., GhostBed, Inc. v. Casper Sleep, Inc.*, No. 15-cv-62571-WPD, 2018 WL 2213002 at *7 (S.D. Fla. May 3, 2018) (holding as a matter of law that search engine techniques and marketing strategies do not constitute "statements" on which a false advertising claim can be based).

Nor do Plaintiffs state a claim based on the advertisements that resulted from 2U's use of these commonplace marketing techniques. Crucially, Plaintiffs do not identify the advertisements they saw or the links they clicked on. *See* Compl. ¶¶ 115-16, 118, 131-32. That lack of specificity is fatal under Rule 9(b). *See, e.g., Kearns*, 567 F.3d at 1126 (dismissing where plaintiff did not specify the advertisements he saw, when he saw them, or which was material); *In re Apple Inc. Device Performance Litig.*, 347 F. Supp. 3d 434, 458 (N.D. Cal. 2019) (generally alleging an advertising campaign fails to plead "with particularity" the "statements [plaintiffs] … actually saw and relied upon"). In addition, Plaintiffs again fail to allege that *2U* made any of the alleged misrepresentations. *See BHRS Grp., LLC v.*

---

Plaintiffs do not allege that they ever viewed the USC Rossier Online Webpage, they likewise have not alleged that they would have seen "selectivity information, or average GRE scores," Compl. ¶ 86, had it been posted there. *Daniel*, 806 F.3d at 1225; *see also Barrett v. Apple Inc.*, 523 F. Supp. 3d 1132, 1151-53 (N.D. Cal. 2021) (dismissing omissions-based claims for lack of causation). Plaintiffs also do not allege—even in conclusory terms—that they would have behaved differently if they saw this information. *Daniel*, 806 F.3d at 1225.

*Brio Water Tech., Inc.*, 553 F. Supp. 3d 793, 799-801 (C.D. Cal. 2021) (dismissing false advertising claim absent allegation the defendant made the misstatement).

\*      \*      \*

In the end, Plaintiffs' fraud claims rest entirely on their theory that *USC* made misleading statements to US News to enhance USC Rossier's ranking.  But 2U is not responsible for this alleged misconduct.  Indeed, Plaintiffs' own sources make clear that 2U did not participate in the US News survey process or submit program data to US News.  Plaintiffs have no basis for dragging 2U into this case based on USC's allegedly deceptive conduct.

## B.      All Of Plaintiffs' Claims Are Barred By *Sonner*

All of Plaintiffs' claims must also be dismissed under the Ninth Circuit's decision in *Sonner* because Plaintiffs have not "establish[ed]" that they "lack[] an adequate legal remedy," as they must to pursue an equitable claim in federal court. 971 F.3d at 844.  That rule applies even if the state's own courts could provide equitable relief without satisfying those principles.  *See id.*  Here, Plaintiffs' claims are all equitable in nature.  *See, e.g.*, *Madrigal v. Hint, Inc.*, No. 17-02095-VAP, 2017 WL 6940534, at *5 (C.D. Cal. Dec. 14, 2017) (discussing FAL, UCL, CLRA and unjust enrichment claims); *see also Guzman v. Polaris Indus. Inc.*, 49 F.4th 1308, 1313 (9th Cir. 2022) (citation omitted) (noting "[t]he UCL provides only for equitable remedies").  Plaintiffs therefore cannot pursue these claims unless they "establish" that they lack "an adequate legal remedy."  *Sonner*, 971 F.3d at 844.

Plaintiffs have not and cannot do so, as they implicitly concede by announcing their intent to seek money damages under the CLRA.  *See* Compl. ¶ 167 (conceding damages are available under the CLRA); Ex. 4 at 1 (requesting damages in the form of tuition reimbursement for alleged CLRA violations).  Plaintiffs' theories of harm—which are based on the exact same course of conduct—are *entirely* monetary; indeed, the primary form of relief they seek is tuition reimbursement.  *See* Compl. ¶ 166 (alleging that Plaintiffs suffered "monetary losses in the form of tuition and fees

that they paid in full or at a premium" in connection with CLRA claim); *see also id.* ¶ 153 (seeking return of "all monies paid" by Plaintiffs and class members for FAL claim); *id.* ¶ 161 (same for UCL); *id.* ¶ 173 (similar for unjust enrichment).  Because adequate legal remedies exist for Plaintiffs' purported harm, these requests for equitable relief must be dismissed.  *See, e.g.*, *Guzman*, 49 F.4th at 1312-15 (affirming dismissal of UCL claim where the plaintiff had adequate legal remedies under the CLRA); *Gomez v. Jelly Belly Candy Co.*, No. 17-00575-CJC, 2017 WL 8941167, at *2 (C.D. Cal. Aug. 18, 2017) (dismissing FAL, UCL, and equitable CLRA claim "based on the exact same conduct" as the plaintiff's damages claims).

Plaintiffs attempt to plead around *Sonner* by including a single, conclusory allegation that they "have no adequate remedy at law[]."  Compl. ¶ 177.  But this threadbare assertion does not "establish" that legal remedies do not exist or that they are inadequate.  *Sonner*, 971 F.3d at 844; *see also Klaehn v. Cali Bamboo LLC*, No. 21-55738, 2022 WL 1830685, at *3 (9th Cir. June 3, 2022) (affirming dismissal of UCL claim where "Plaintiffs failed to make any plausible allegation that they lacked an adequate remedy at law").  Under *Sonner*, Plaintiffs must "allege some facts" explaining *why* damages are insufficient to make them whole, which they have utterly failed to do.  *Gibson v. Jaguar Land Rover N. Am., LLC*, No. 20-00769-CJC, 2020 WL 5492990, at *3 (C.D. Cal. Sept. 9, 2020) (dismissing UCL and CLRA claim for equitable relief).  In any event, there is no reason damages would be insufficient here, given that Plaintiffs can recover the exact same sum in legal damages that they seek in equitable restitution.  *See Sonner*, 971 F.3d at 844.

Finally, to the extent Plaintiffs claim injunctive relief is necessary to make them whole, that argument falls woefully short.  Plaintiffs are former students who, by their own accounts, are now *fully aware* that past USC Rossier rankings were based on allegedly manipulated data, and there is no reason to believe they "will again be wronged in a similar way" such that injunctive relief would be necessary.  *City of Los Angeles v. Lyons*, 461 U.S. 95, 111 (1983); *see also Bates v. United*

*Parcel Serv., Inc.*, 511 F.3d 974, 985 (9th Cir. 2007) (plaintiff must establish a threat of future injury to pursue injunctive relief).  Moreover, Plaintiffs concede that USC Rossier has dropped out of the most recent US News rankings, and do not allege any ongoing misconduct by either Defendant.  *See, e.g.*, Compl. ¶¶ 75, 77-78, 80-86, 135 (alleging conduct from April 1, 2009 through April 27, 2022); *Tabler v. Panera LLC*, No. 19-cv-01646-LHK, 2019 WL 5579529, at *8 (N.D. Cal. Oct. 29, 2019) (dismissing request for injunctive relief where plaintiff made "no allegation of future injury in the complaint").[7]  All of Plaintiffs' claims therefore must be dismissed.

### C.    Plaintiffs Have No Unjust Enrichment Claim

Finally, Plaintiffs' "unjust enrichment claim," Compl. ¶¶ 168-178, fails because "unjust enrichment is not a cause of action" in California.  *De Havilland v. FX Networks, LLC*, 21 Cal. App. 5th 845, 870 (2018) (citations omitted); *see also Persona Cosmetics, Inc. v. Societe Des Produits Nestle S.A.*, No. 2:21-cv-04644-JVS, 2021 WL 6103348, at *4 (C.D. Cal. Nov. 3, 2021) (same).  "Unjust enrichment" does not describe "a theory of recovery," but an "effect": the result of a failure to make restitution under circumstances where it is equitable to do so. *M&M Consulting Grp., LLC v. JP Morgan Bank, N, A.*, No. 20-01318-JVS, 2021 WL 71436, at *8 (C.D. Cal. Jan. 6, 2021) (citing *Melchior v. New Line Prods., Inc.*, 106 Cal. App. 4th 779, 793 (2003)).  As a result, "unjust enrichment cannot stand alone as an independent claim for relief," but instead depends on separate, well-pled causes of action.  *Iezza v. Saxon Mortg. Servs., Inc.*, No. 10-03634-DDP, 2010 WL 3834041, at *2 (C.D. Cal. Sept. 28, 2010).  For the reasons already given, Plaintiffs have no well-pled cause of action here, which dooms their unjust enrichment "claim."  *See, e.g.*, *ConsumerDirect, Inc. v. Pentius, LLC*, No. 21-cv-01968-JVS, 2022 WL 1585702, at *10 (C.D. Cal. Apr. 4, 2022) (dismissing a standalone claim).

---

[7] For the same reasons, Plaintiffs fail to allege "any threat of real and immediate future harm" required to establish Article III standing for injunctive relief. *Franckowiak v. Scenario Cockram USA, Inc.*, No. 20-8569-JFW, 2020 WL 9071697, at *4 (C.D. Cal. Nov. 30, 2020).

In any event, even if unjust enrichment were a standalone cause of action, Plaintiffs cannot invoke it because they have not alleged that 2U unjustly retained any benefit.  In California, entitlement to restitution requires (1) receipt of a benefit, and (2) unjust retention of the benefit at the other's expense.  *In re ConAgra Foods Inc.*, 908 F. Supp. 2d 1090, 1113 (C.D. Cal. 2012) (citing *Lectrodryer v. SeoulBank*, 77 Cal. App. 4th 723, 726 (2000)); *see also Hapraz v. Belkin Int'l, Inc.*, No. 09-5897-VBF, 2010 WL 11519319, at *2 (C.D. Cal. 2010) (dismissing misrepresentation-based unjust enrichment claim for failure to satisfy Rule 9(b)).

Here, however, Plaintiffs never paid 2U anything.  Moreover, "plaintiffs received the benefit of the bargain": in exchange for tuition dollars they paid USC, they received classes and an eventual degree.  *Peterson v. Cellco P'ship*, 164 Cal. App. 4th 1583, 1593 (2008).  Plaintiffs do not explain how they lost money from USC allegedly excluding selectivity data from its online programs, or otherwise failed to receive the benefit of the bargain they struck.[8]  There is "no equitable reason for invoking restitution" where, as here, "the plaintiff gets the exchange which he expected."  *Comet Theatre Enters., Inc. v. Cartwright*, 195 F.2d 80, 83 (9th Cir. 1952); *see also Chuang v. Dr. Pepper Snapple Grp., Inc.*, No. 17-01875-MWF, 2017 WL 4286577, at *8 (C.D. Cal. 2017) (dismissing restitution claim).[9]

## V.   CONCLUSION

For the foregoing reasons, and because key defects cannot be cured by amendment, 2U respectfully seeks dismissal of Plaintiffs' Complaint with prejudice.

---

[8] Plaintiffs' speculative allegations about 2U's profit-sharing arrangement with USC, Compl. ¶¶ 21-40, are entirely irrelevant to the claims Plaintiffs have actually brought, including for unjust enrichment.  That 2U derives some revenue from tuition paid by students it recruits does not mean that 2U *unjustly* received that revenue, where the students received the education they paid for.

[9] For the same reason, Plaintiffs have failed to adequately plead how they were damaged by the rankings-related statements, which is a required element of their FAL, UCL, and CLRA claims.  *See Charbonnet v. Omni Hotels & Resorts*, No. 20-cv-01777-CAB, 2020 WL 7385828, at *4-5 (S.D. Cal. Dec. 16, 2020) (dismissing FAL, UCL, and CLRA claims for failure to plead economic injury-in-fact).

1   Dated:  March 8, 2023                      Respectfully submitted,

2                                              LATHAM & WATKINS LLP
3                                              Elizabeth L. Deeley
                                               Melanie M. Blunschi
4                                              Roman Martinez

5

6                                              By   */s/ Melanie M. Blunschi*
7                                                   Melanie M. Blunschi
                                               *Attorneys for Defendant 2U, Inc.*
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW

2U, INC.'s NOTICE OF MOTION AND MOTION TO
DISMISS CLASS ACTION COMPLAINT
Case No. 2:23-cv-00846 SPG (MARx)