UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 23-846-GW-MARx | Date | January 23, 2024 |
|---|---|---|---|
| Title | *Iola Favell et al v. University of Southern California, et al.* | | |

| Present: The Honorable | GEORGE H. WU, UNITED STATES DISTRICT JUDGE | |
|---|---|---|
| Javier Gonzalez | None Present | |
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
|---|---|
| None Present | None Present |

PROCEEDINGS:     **IN CHAMBERS - FINAL RULING ON DEFENDANT 2U, INC.'S MOTION TO DISMISS SECOND AMENDED CLASS ACTION COMPLAINT [77]**

Attached hereto is the Court's Final Ruling on Defendant's Motion [77]. Plaintiffs have not sufficiently alleged that the statements at issue are actionable against 2U, or that 2U exercised control over the statements made by USC, the Court dismisses Plaintiffs' claims under the FAL, UCL, and CLRA. Plaintiffs will be granted leave to amend to cure the above-noted deficiencies. Plaintiffs may file amended complaints within twenty-one days of this order.

                                                                            :
                                                  Initials of Preparer    JG

***Iola Favell et al v. University of Southern California et al*** ("*Favell I*"); Case No. 2:23-cv-00846-GW-(MARx); ***Iola Favell et al v. University of Southern California et al*** ("*Favel II*"); Case No. 2:23-cv-03389-GW-(MARx) – Final Ruling on 2U's Motion to Dismiss Case (*Favel I*, ECF No. 77 and *Favell II*, ECF No. 67)

## I.   Background

### A.  Procedural Background

On December 20, 2022, Plaintiffs Iola Favell, Sue Zarnowski, and Mariah Cummings ("Plaintiffs")[1] filed a putative class action against Defendants University of Southern California ("USC") and 2U, Inc. ("2U") (together, "Defendants") in the Superior Court of the State of California, County of Los Angeles.  *See* Complaint, *Iola Favell et al v. University of Southern California et al* ("*Favell I*"), No. 2:23-cv-00846-GW-(MARx) (C.D. Cal.), ECF No. 1-1.[2] Plaintiffs alleged that Defendants engaged in a scheme to artificially inflate the U.S. News & World Report ("US News") ranking of USC Rossier School of Education by submitting inaccurate or incomplete data to US News and market the resulting ranking to the public.  *See id.*  The initial Complaint asserted four causes of action for: (1) violation of California's False Advertising Law ("FAL"), Cal. Bus. & Prof. Code § 17500 et seq.; (2) violation of California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code § 17200 et seq.; (3) violation of the Consumer Legal Remedies Act ("CLRA"), Cal. Bus. & Prof. Code § 1750 et seq.; and (4) unjust enrichment. *See id.*

On February 3, 2023, 2U removed *Favell I* to federal court pursuant to the Class Action Fairness Act.  *See* Notice of Removal, ECF No. 1.  Thereafter, 2U and USC each moved to dismiss, arguing in part that Plaintiffs' claims for equitable relief were barred under *Sonner v. Premier Nutrition Corp.*, 971 F.3d 834 (9th Cir. 2020).  *See* ECF Nos. 28, 30.  Before those motions were decided, Plaintiffs filed a First Amended Complaint on March 29, 2023.  *See* ECF No. 32.  The First Amended Complaint dropped Plaintiffs' equitable claims and instead asserted a single cause of action for damages under the CLRA.  Plaintiffs also filed a related action in state court on the same day.  *See* Complaint, *Iola Favell et al v. University of Southern California et al* ("*Favel II*"), No. 2:23-cv-03389-GW-(MARx) (C.D. Cal.), ECF No. 1-1.  The factual allegations in *Favell II*

---

[1] Ahmad Murtada was subsequently added as a plaintiff.

[2] Unless otherwise indicated, references to "ECF No. __" refer to docket numbers in *Favell I*.

are the same as in *Favell I*, but Plaintiffs reasserted their three equitable causes of action under the FAL, UCL, and CLRA.  Defendants again removed to this Court.  *See* Notice of Removal, *Favell II*, ECF No. 1.

USC and 2U each moved to dismiss the First Amended Complaint in *Favell I*.  *See* ECF Nos. 42, 43.  On July 5, 2023, the Court denied USC's motion to dismiss but granted 2U's motion to dismiss with leave to amend.  *See* Tentative Ruling on Defendants' Motions to Dismiss ("Order"), ECF No. 63 (made final at ECF No. 64).  The parties stipulated that Plaintiffs could amend the Complaint in *Favell II* as well, and Plaintiffs filed amended complaints in both actions on July 28, 2023.  *See* Second Amended Complaint ("SAC"), *Favel I*, ECF No. 67; First Amended Complaint ("FAC"), *Favel II*, ECF No. 58.  The parties further agreed that 2U would file one consolidated motion to dismiss the claims against it both actions.  That motion is now before the Court.  *See* 2U's Motion to Dismiss Case ("Mot."), *Favel I*, ECF No. 77 and *Favell II*, ECF No. 67.  Plaintiffs filed an opposition.  *See* Plaintiffs' Opposition to 2U's Motion to Dismiss ("Opp."), *Favel I*, ECF No. 81 and *Favell II*, ECF No. 71.  2U filed a reply.  *See* 2U's Reply in Support of Motion to Dismiss ("Reply"), *Favel I*, ECF No. 85 and *Favell II*, ECF No. 75.

### B.  Factual Background[3]

USC is a private nonprofit university that offers undergraduate and graduate degree programs, including through the USC Rossier School of Education ("USC Rossier").  SAC ¶ 23.  In or around 2008, USC began its business relationship with 2U, an education technology startup, to develop an online Master of Arts in Teaching program.  *Id*. ¶ 24.  The program was the first of USC Rossier's online degree programs and went live in June 2009.  *Id*.  In October 2008, 2U and USC entered into a services agreement whereby 2U would provide certain technological, marketing, promotional, and other support services, and in exchange would receive an undisclosed percentage of the tuition revenue from students enrolled in USC Rossier's online degree program.[4]  *Id*. ¶¶ 25-28, Ex. A.

---

[3] The factual allegations in this section are derived from the operative complaints and judicially noticeable documents.  Because the factual allegations (the first 171 paragraphs) in the SAC in *Favel I* and FAC in *Favel II* are identical, the Court will cite to the SAC in *Favel I* for simplicity.

[4] According to a report by the Wall Street Journal: "Universities frequently provide 2U with 60% of the tuition for online degree programs."  *Id*. ¶ 29 (quoting Lisa Bannon & Rebecca Smith, *That Fancy University Course? It Might Actually Come From an Education Company*, The Wall Street Journal (July 6, 2022), https://www.wsj.com/articles/that-fancyuniversity-course-it-might-actually-come-from-an-education-company-11657126489) (emphasis omitted).  Plaintiffs allege that 2U likely receives a similar percentage of tuition revenue from USC Rossier.  *Id*.

US News calculates its annual Best Education Schools rankings using data sent by graduate education schools who choose to participate in the rankings. *Id.* ¶ 55. US News develops and provides to participating schools instructions to ensure that they collect and report data in a consistent way. *Id.* To determine its rankings, US News employs a specific methodology which assigns weights to eleven criteria based on their perceived importance to determining academic quality. *Id.* ¶ 56. Relevant here, "student selectivity" accounts for 18% of the school's total score and is comprised of three objective sources of admittance data: (1) the school's doctoral acceptance rate (6%); (2) mean GRE quantitative scores (6%); and (3) mean GRE verbal scores (6%). *Id.*

Throughout the relevant period (2009 through 2021), US News required schools to submit the data used in the rankings, including student selectivity data, from all the school's education doctoral programs. *Id.* ¶ 60. The methodology does not distinguish between data from in-person and online programs. *Id.* ¶ 57. However, an internal investigation conducted by USC's outside counsel, Jones Day, determined that USC had submitted student selectivity data only for USC Rossier's highly selective, in-person Ph.D. program, but not from its less-competitive EdD program (which was offered online after 2015). *Id.* ¶ 59. From the 2009 rankings to the 2010 rankings, USC Rossier's reported acceptance rate dropped 40 percentage points (from 50.7% to 10.5%), and its ranking rose 16 places (from #38 to #22). *Id.* ¶¶ 50, 58-61.

US News also began publishing a specialty ranking of online master's degrees in education in 2013. *Id.* ¶ 69. USC Rosier's online Master of Arts in Teaching program ranked #44 that year. *Id.* USC did not participate in those rankings in at least 2014 and 2016, nor did the program appear on the publicly available list in 2015, 2017, 2018, 2019, 2020, or 2021. *Id.*

Plaintiffs allege that Defendants, knowing the importance of the rankings on prospective students' school choice, heavily marketed USC Rossier's rapidly rising ranking to the public to boost enrollment in the online programs. *Id.* ¶¶ 76, 78. USC orchestrated this scheme through its submission of false/incomplete data, and then advertised the resulting rankings knowing that they were misleading. *Id.* ¶ 77. For its part, 2U helped "push the rankings out on a much broader scale," and knew or should have known that the rankings were fraudulently procured. *Id.* ¶¶ 76-77. For example, 2U engaged in online advertising to promote USC Rossier's ranking to more applicants, including by purchasing search terms from Google and running advertisements on social media. *Id.* ¶¶ 79-81. Between 2015 and 2021, 2U spent more than half of its revenue on

program sales and marketing.[5]  *Id.* ¶ 82.  USC likewise regularly touted USC Rossier's ranking (and that USC Rossier was "top-ranked") in press releases, on social media, on the Rossier Website, and in other promotional materials.  *Id.* ¶¶ 83-88.  In these advertisements, Defendants did not disclose that USC Rossier was ranked lower or not ranked at all in US News' online master's degrees in education rankings, or that the data submitted to US News was incomplete or inaccurate.  *Id.* ¶¶ 88-90.  The named Plaintiffs saw and relied on Defendants' advertisements in different locations over different periods of time.  *Id.* ¶¶ 127, 139, 149, 157.

## II.   <u>Legal Standard</u>

Under Rule 12(b)(6), a court must: (1) construe the complaint in the light most favorable to the plaintiff, and (2) accept all well-pleaded factual allegations as true, as well as all reasonable inferences to be drawn from them.  *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Pareto v. F.D.I.C.*, 139 F.3d 696, 699 (9th Cir. 1998).  The court need not accept as true "legal conclusions merely because they are cast in the form of factual allegations."  *Warren v. Fox Family Worldwide, Inc.*, 328 F.3d 1136, 1139 (9th Cir. 2003).  In its consideration of the motion, the court is limited to the allegations on the face of the complaint (including documents attached thereto), matters which are properly judicially noticeable and "documents whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the pleading."  *See Lee v. City of Los Angeles*, 250 F.3d 668, 688-89 (9th Cir. 2001); *Branch v. Tunnell*, 14 F.3d 449, 453-54 (9th Cir. 1994), *overruling on other grounds recognized in Galbraith v. County of Santa Clara*, 307 F.3d 1119 (9th Cir. 2002).

Dismissal pursuant to Rule 12(b)(6) is proper only where there is either a "lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory."  *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990); *Johnson v. Riverside Healthcare Sys., LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 561-63 (2007) (dismissal for failure to state a claim does not require the appearance, beyond a doubt, that the plaintiff can prove "no set of facts" in support of its claim that would entitle it to relief).  However, a plaintiff must also "plead 'enough facts to state

---

[5] Plaintiffs allege that most of these expenses were "likely expended on USC given that throughout the class period, a significant amount of 2U's revenue was still derived from USC."  *Id.* ¶ 82; *see also id.* ¶ 64 (alleging that when 2U went public in 2014, "USC was one of only five 2U clients, and critical to its profitability, accounted for 69% of revenues").

a claim to relief that is plausible on its face.'" *Johnson*, 534 F.3d at 1122 (quoting *Twombly*, 550 U.S. at 570); *see also William O. Gilley Enters., Inc. v. Atlantic Richfield Co.*, 588 F.3d 659, 667 (9th Cir. 2009) (confirming that *Twombly* pleading requirements "apply in all civil cases"). A complaint does not "suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 556). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

While Rule 8(a)(2) of the Federal Rules of Civil Procedure requires only that a party's pleading contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), "Rule 9(b) requires that, when fraud is alleged, 'a party must state with particularity the circumstances constituting fraud . . . .'" *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). "Rule 9(b) demands that the circumstances constituting the alleged fraud 'be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Id.* (quoting *Bly-Magee v. California*, 236 F.3d 1014, 1019 (9th Cir. 2001)) (omitting internal quotation marks). "A party alleging fraud must 'set forth more than the neutral facts necessary to identify the transaction.'" *Id.* (quoting *In re GlenFed, Inc. Sec. Litig.*, 42 F.3d 1541, 1548 (9th Cir. 1994)). "Averments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged." *Id.* (quoting *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1102 (9th Cir. 2003)) (omitting internal quotation marks); *see also U.S. ex rel. Anita Silingo v. WellPoint, Inc.*, 904 F.3d 667, 677 (9th Cir. 2018). Moreover, "[t]o satisfy Rule 9(b), a fraud suit against differently situated defendants must 'identify the role of each defendant in the alleged fraudulent scheme.'" *Silingo*, 904 F.3d at 677 (quoting *Swartz v. KPMG LLP*, 476 F.3d 756, 765 (9th Cir. 2007)).

## III.  Discussion

### A.  Applicable Law

Plaintiffs bring their misrepresentation claims under the FAL, UCL, and CLRA. The FAL prohibits businesses from disseminating statements that are "untrue or misleading, and which [are] known, or which by the exercise of reasonable care should be known, to be untrue or misleading." Cal. Bus. & Prof. Code § 17500. The UCL prohibits "any unlawful, unfair or fraudulent business act or practice," as well as any "unfair, deceptive, untrue or misleading

advertising" and any violation of the FAL.  Cal. Bus. & Prof. Code § 17200; *see also Kasky v. Nike, Inc.*, 27 Cal. 4th 939, 951 (2002) (noting that "'[a]ny violation of the false advertising law . . . necessarily violates' the UCL."  (quoting *Comm. On Children's Television, Inc. v. Gen. Foods Corp.*, 35 Cal. 3d 197, 210 (1983)) (alterations in original)).   The CLRA "proscribes specified 'unfair methods of competition and unfair or deceptive acts or practices' in transactions for the sale or lease of goods to consumers." *Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833 (2006) (quoting Cal. Civ. Code. § 1770(a)).

The FAL and UCL "prohibit 'not only advertising which is false, but also advertising which[,] although true, is either actually misleading or which has the capacity, likelihood or tendency to deceive or confuse the public.'" *Kasky*, 27 Cal. 4th 939 (quoting *Leoni v. State Bar*, 39 Cal. 3d 609, 626 (1985)) (alteration in original); *see also Day v. AT & T Corp.*, 63 Cal. App. 4th 325, 332-33 (1998) ("A perfectly true statement couched in such a manner that it is likely to mislead or deceive the consumer, such as by failure to disclose other relevant information, is actionable under these sections.").  To plead a FAL or UCL claim "based on false advertising or promotional practices," a plaintiff need "only . . . show that members of the public are likely to be deceived." *Kasky*, 27 Cal. 4th 939 (quoting *Comm. On Children's Television*, 35 Cal. 3d at 211).  "Whether an advertisement is 'misleading' must be judged by the effect it would have on a reasonable consumer." *Davis v. HSBC Bank Nev., N.A.*, 691 F.3d 1152, 1161 (9th Cir. 2012).  "A reasonable consumer is 'the ordinary consumer acting reasonably under the circumstances.'" *Id.* at 1162 (quoting *Colgan v. Leatherman Tool Grp., Inc.*, 135 Cal. App. 4th 663, 682 (2006)).  "The standards for determining whether a representation is misleading under the False Advertising Law apply equally to claims under the CLRA.  Conduct that is 'likely to mislead a reasonable consumer' thus violates the CLRA." *Colgan*, 135 Cal. App. 4th at 680 (citations omitted); *see also Williams v. Gerber Products*, 552 F.3d 934, 938 (9th Cir. 2008) ("Appellants' claims under [the UCL, FAL, and CLRA] are governed by the 'reasonable consumer' test.").

1.  <u>Knowledge or Intent</u>

Unlike common law fraud,[6] California's consumer protection statutes do not normally

---

[6] "The elements of fraud, which give rise to the tort action for deceit, are (1) a misrepresentation, (2) with knowledge of its falsity, (3) with the intent to induce another's reliance on the misrepresentation, (4) justifiable reliance, and (5) resulting damage." *Conroy v. Regents of Univ. of California*, 45 Cal. 4th 1244, 1255 (2009).

require a plaintiff to allege that the defendant had knowledge of the falsity and an intent to deceive; rather, "a defendant can violate the UCL, FAL, and CLRA by acting with mere negligence." *Moore v. Mars Petcare US, Inc.*, 966 F.3d 1007, 1019 n.11 (9th Cir. 2020). A violation of the FAL *requires* the defendant to have acted at least negligently. *See* Cal. Bus. & Prof. Code § 17500 (prohibiting the making of an untrue or misleading statement "which is known, or which by the exercise of reasonable care should be known, to be untrue or misleading"); *Beyer v. Symantec Corp.*, 333 F. Supp. 3d 966, 981 (N.D. Cal. 2018) ("A claim under the FAL requires that the defendant have known or reasonably should have known that the statement in question was misleading."). The UCL, by contrast, "imposes strict liability." *Paduano v. Am. Honda Motor Co.*, 169 Cal. App. 4th 1453, 1468 (2009) (quoting *S. Bay Chevrolet v. Gen. Motors Acceptance Corp.*, 72 Cal. App. 4th 861, 877 (1999)); *see also Bank of the W. v. Superior Ct.*, 2 Cal. 4th 1254, 1267 (1992) ("[T]o state a claim under the [UCL] one need not plead and prove the elements of a tort."). However, because each of the "prongs" of the UCL provide an independent basis for relief – and because the "unlawful" prong "borrows" violations of other federal or state laws – whether intent or knowledge is an element of a UCL claim will sometimes depend on the underlying offense. *See e.g.*, *Irwin v. Mascott*, 94 F. Supp. 2d 1052, 1057 (N.D. Cal. 2000).

The level of knowledge required under the CLRA is somewhat less settled. In *Wilson v. Hewlett-Packard Co.*, the Ninth Circuit held that "under the CLRA, plaintiffs must sufficiently allege that a defendant was aware of a defect at the time of sale to survive a motion to dismiss." 668 F.3d 1136, 1145 (9th Cir. 2012). *Wilson* was a product defect case, and the claim at issue was based on the *sale* of the defective product and not its being mislabeled or falsely advertised. In other words, the plaintiffs in *Wilson* asserted a theory of misrepresentation based on the defendant's omissions, rather than any affirmative misrepresentation. *See generally Daugherty v. Am. Honda Motor Co.*, 144 Cal. App. 4th 824, 833-87 (2006) (discussing fraudulent omissions theory). Even so, some courts have applied *Wilson's* knowledge requirement to affirmative misrepresentation claims (and to claims not involving product safety defects). *See, e.g.*, *Coleman-Anacleto v. Samsung Elecs. Am., Inc.*, No. 16-cv-02941-LHK, 2017 WL 86033, at *7 (N.D. Cal. Jan. 10, 2017) ("A plaintiff must sufficiently allege a defendant's knowledge at the time of sale in order to state a CLRA claim under an affirmative misrepresentation theory just as a plaintiff must do so in order to state a CLRA claim under a fraudulent omission theory.") (collecting cases). Other courts have read *Wilson* more narrowly. *See, e.g.*, *Martin v. Ford Motor Co.*, No. CV 20-

10365-DMG (JPRx), 2022 WL 2062470, at *4 (C.D. Cal. Feb. 17, 2022) ("As a general matter, the UCL and CLRA can be violated by 'mere negligence,' so knowledge of the falsity of a representation is not a required element." (quoting *Moore*, 966 F.3d at 1019 n.11)); *Racies v. Quincy Bioscience, LLC*, No. 15-CV-00292-HSG, 2016 WL 5746307, at *6 (N.D. Cal. Sept. 30, 2016) ("Under . . . California Supreme Court and Ninth Circuit precedents, the Court finds that Plaintiff did not need to present evidence that Defendant knew the affirmative label representations at issue were false."). Given this ambiguity, and given that both parties agree that negligence is the appropriate standard under at least the FAL, the Court will assume for present purposes that knowledge of the falsity is not a requirement under the CLRA on the facts of this case.

### 2. Puffery and Statements of Opinion

Under California's consumer protection statutes, "[g]eneralized, vague, and unspecified assertions constitute 'mere puffery' upon which a reasonable consumer could not rely, and hence are not actionable." *Anunziato v. eMachines, Inc.*, 402 F. Supp. 2d 1133, 1139 (C.D. Cal. 2005); *see also Edmunson v. Procter & Gamble Co.*, No. 10-CV-2256-IEG NLS, 2011 WL 1897625, at *3 (S.D. Cal. May 17, 2011) ("An alleged misrepresentation must relate to an objectively verifiable fact; subjective representations related to product superiority are mere puffery and are not actionable."). "Statements of this kind cannot ground liability for falsity because no reasonable consumer would be inclined to think of them as statements of fact, rather than as statements of opinion. And since statements of opinion are presumed not to mislead reasonable consumers, statements of sales puffery do not count as false advertising." *Bezirganyan v. BMW of N. Am., LLC*, 562 F. Supp. 3d 633, 643 (C.D. Cal. 2021); *see also Consumer Advocate v. Echostar Satellite Corp.*, 113 Cal. App. 4th 1351, 1361 & n.3 (2003) (holding that "a claim which no reasonable consumer would take as anything more weighty than an advertising slogan" is not actionable); *Demetriades v. Yelp, Inc.*, 228 Cal. App. 4th 294, 311 (2014) ("A statement is considered puffery if the claim is extremely unlikely to induce consume reliance." (quoting *Newcal Indus., Inc. v. Ikon Off. Sol.*, 513 F.3d 1038, 1053 (9th Cir. 2008))).

"Ultimately, the difference between a statement of fact and mere puffery rests in the specificity or generality of the claim." *Newcal*, 513 F.3d at 1053 (citing *Cook, Perkiss & Liehe, Inc. v. N. California Collection Serv. Inc.*, 911 F.2d 242, 246 (9th Cir. 1990)).[7] "An actionable

---

[7] Though *Newcal*, *Cook*, and several other cases cited herein involved federal claims under the Lanham Act – a statute not at issue here – the standard governing nonactionable puffery under the Lanham Act has been applied

statement is 'a specific and measurable claim, capable of being proved false or of being reasonably interpreted as a statement of objective fact.'" *Ariix, LLC v. NutriSearch Corp.*, 985 F.3d 1107, 1121 (9th Cir. 2021) (quoting *Coastal Abstract Serv., Inc. v. First Am. Title Ins. Co.*, 173 F.3d 725, 730 (9th Cir. 1999)). By contrast, puffery "is a general claim of superiority or exaggeration which is 'expressed in broad, vague or commendatory language'" and lacks "the kind of detailed or specific factual assertions that are necessary to" test the truth of the claim. *In re Century 21-RE/MAX Real Est. Advert. Claims Litig.*, 882 F. Supp. 915, 926 (C.D. Cal. 1994) (quoting *Castrol, Inc. v. Pennzoil Company,* 987 F.2d 939, 945 (3rd Cir. 1993) and *Cook*, 911 F.2d at 246).[8]

Whether a business practice is deceptive is generally a question of fact unfit for decision on a motion to dismiss. *See Williams*, 552 F.3d at 938-39. However, certain types of statements "are not actionable as a matter of law." *Shaeffer v. Califia Farms, LLC*, 44 Cal. App. 5th 1125, 1139 (2020) (affirming dismissal of claim involving a "truthful statement about one's own product"); *see also Moore v. Trader Joe's Co.*, 4 F.4th 874, 886 (9th Cir. 2021) (affirming dismissal on grounds that representations were not misleading as a matter of law). In the context of the Lanham Act, the Ninth Circuit has stated that "the determination of whether an alleged misrepresentation 'is a statement of fact' or is instead 'mere puffery' is a legal question that may be resolved on a Rule 12(b)(6) motion." *Newcal*, 513 F.3d at 1053 (citing *Cook*, 911 F.2d at 246); *accord Int'l Code Council*, 43 F.4th at 60 ("If the challenged advertisements fall under the first form of puffery – subjective statements of opinion which cannot be proven false – then courts treat them as non-actionable puffery as a matter of law."). Accordingly, district courts often dismiss claims under California's consumer protection statutes as puffery at the pleading stage. *See, e.g., Haskell v. Time, Inc.*, 857 F. Supp. 1392, 1399 (E.D. Cal. 1994) (dismissing claims under the FAL and UCL and noting that "if the alleged misrepresentation, in context, is such that no reasonable

---

interchangeably in the context of state law claims. *See, e.g.*, *Williams*, 552 F.3d at 939 n.3 (citing *Cook* in context of discussing whether statements were puffery under the UCL and CLRA); *Paduano*, 169 Cal. App. 4th at 1500 (O'Rourke, J., concurring in part and dissenting in part) (same).

[8] Some courts recognize two distinct forms of puffery: "The first encompasses subjective claims about products, which cannot be proven either true or false. It often manifests as exaggerations or overstatements that mention nothing specific, but rather amount to general claims of superiority expressed in broad, vague, and commendatory language that are considered to be offered and understood as an expression of the seller's opinion only. The second form of puffery involves exaggerated, blustering, and boasting statements that are *objective* – and therefore technically provable – but upon which no reasonable buyer would be justified in relying." *Int'l Code Council, Inc. v. UpCodes Inc.*, 43 F.4th 46, 59-60 (2d Cir. 2022) (cleaned up). Although the Ninth Circuit does not appear to have placed any special significance on this distinction, the Court notes that the claims at issue here pertain to the first form of puffery.

consumer could be misled, then the allegation may also be dismissed as a matter of law"); *Baltazar v. Apple Inc.*, No. C 10-03231 WHA, 2011 WL 6747884, at \*4 (N.D. Cal. Dec. 22, 2011) ("If an alleged misrepresentation would not deceive a reasonable consumer or amounts to mere puffery, then the claim may be dismissed as a matter of law.").

### B.  2U's Arguments

2U's leading argument is that Plaintiffs have not pled any actionable statement by 2U.  2U categorizes the alleged misrepresentations at issue into two groups: (1) statements that USC Rossier was "top-ranked," and (2) statements which included the specific numerical ranking assigned by US News.  According to 2U, both types of statements are nonactionable puffery or statements of opinion.

### 1.  "Top-Ranked" Statements

The first category of statements Plaintiffs allege to be misleading are statements that USC Rossier was "top-ranked."  For example, the SAC alleges:

> In 2018, Defendants refer to USC Rossier as 'top-ranked' in the first sentence of the 2U-run webpage devoted to USC Rossier' online MAT program, with a note referring to USC Rossier's #10 2018 ranking in US News' 'Best Graduate Schools of Education.'  2U has also used the same 'top-ranked' language to describe USC Rossier's Online Degrees in other marketing materials, including press releases.

SAC ¶ 88(c) (footnotes omitted); *see also* SAC ¶ 91 ("Even though USC Rossier has abandoned the Best Education Schools Rankings, the 'bio' at the top of USC Rossier's MAT program's Twitter page (@USCTeacher) still referred to the 'top-ranked @USCRossier School of Education' as of the date of filing this complaint.").

The Court agrees with 2U that these statements are textbook puffery.  *See McLaughlin v. Homelight, Inc.*, No. 2:21-cv-05379-MCS-KES, 2021 WL 5986913, at \*4 (C.D. Cal. Sept. 17, 2021) (collecting cases finding that claims involving the term "top" are nonactionable puffery).  The claim that a school is "top-ranked" is both "vague [and] highly subjective" and lacks "the kind of detailed or specific factual assertions that are necessary to" test the truth of the claim.  *Cook*, 911 F.2d at 246 (first quote quoting *Sterling Drug, Inc. v. F.T.C.*, 741 F.2d 1146, 1150 (9th Cir. 1984)).  It fails to specify, for instance, by whom the school has been ranked, or according to what criteria.  Moreover, as stated by another court with respect to a very similar representation:  "In order to prove falsity, one would need to know which schools are 'top universities.'  To some, this might indicate the top ten universities in the nation, while others might consider a much larger

number." *CollegeNet, Inc. v. Embark.Com, Inc.*, 230 F. Supp. 2d 1167, 1177 (D. Or. 2001).[9]  In short, these "top-ranked" statements amount to no more than "general claim[s] of superiority or exaggeration" and therefore are not actionable.  *Century 21*, 882 F. Supp. at 926 (quoting *Castrol*, 987 F.2d 945).

Perhaps recognizing the difficulty in basing their misrepresentation claims on these "top-ranked" statements,[10] Plaintiffs instead attempt to shift the focus to Defendants' overarching advertising campaign.  They argue that "[o]ccasional references to the program being 'top-ranked' must be read in" the context of Defendants' "coordinated campaign to convey an overall message that Rossier was more highly ranked by US News than it was in fact."  Opp. at 16.  Read in that context, Plaintiffs contend, "consumers would reasonably understand the phrase as shorthand that reinforces the overall message."  *Id.*  Even if the Court were to accept this theory, however, that would not save Plaintiffs' "top-rated" claims.  That is because, as discussed *infra*, the overarching advertising campaign to which Plaintiffs attempt to link the "top-rated" claims is *itself* not actionable against 2U.

### 2.   Statements Including US News' Numerical Ranking

The second category of alleged misrepresentations are advertisements that included a specific numerical ranking assigned by US News.  For example, the SAC alleges:

a. On April 23, 2009, USC published a "News Alert" on the Rossier Website celebrating the fact that it "ha[d] just been ranked 22nd in U.S. News and World Report's 2010 edition of America's Best Graduate Schools";

b. On April 19, 2011, USC published a press release regarding Defendants' Online MAT Program, promoting the fact that "the USC Rossier School was ranked #14 . . . by U.S. News and World Report this year";

c. A February 6, 2013, USC Rossier press release entitled "USC Rossier Dean Gallagher Honored by California Superintendents" stated, "Since becoming dean of the USC Rossier School of Education in 2000, Gallagher has moved the school

---

[9] Plaintiffs' attempt to distinguish *CollegeNet* is unavailing.  Plaintiffs argue that unlike the unqualified "top universities" statement at issue in that case, the phrase "top-ranked" here implicitly means "top-ranked *by US News*" which, according to Plaintiffs, can be proven false.  However, even assuming *arguendo* that "top-ranked" does indeed imply a ranking by US News as opposed to some other organization, that would do nothing to get around the underlying problem identified in *CollegeNet*: that what constitutes a "top" ranked university – even a top-ranked university by US News – is essentially unquantifiable.

[10] Indeed, Plaintiffs previously appeared to disclaim their intention to hold 2U liable for statements that simply refer to USC Rossier as "top-ranked" unaccompanied by any reference to a particular numerical ranking.  *See* ECF No. 51 at 19 n.9.

to #15 in the US News & World Report national rankings" . . . .

SAC ¶ 83.[11]

2U argues that these statements are nonactionable statements of opinion under the Ninth Circuit's decision in *Ariix*, 985 F.3d 1107.  In *Ariix*, a nutrition supplement company brought a Lanham Act false advertising claim against the publisher and author of a nutrition supplement guide.  *Id.* at 1111.  The guide rated various products, including the plaintiff's, according to a "five-star rating system based on 18 criteria."  *Id.*  The district court dismissed the plaintiff's claim that the ratings were misleading as to the quality of the plaintiff's goods, in part on the grounds that the ratings were nonactionable.  *Id.* at 1114.  The Ninth Circuit agreed with that conclusion and held that the ratings were "simply statements of opinion about the relative quality of various nutritional supplement products."  *Id.* at 1121.  In so holding, the court rejected the plaintiff's argument that the ratings were "factual" – and therefore actionable – "because the Guide purports to rely on scientific and objective criteria."  *Id.*  The court reasoned instead that "there is an inherently subjective element in deciding which scientific and objective criteria to consider." *Id.*  To illustrate, the court drew an analogy to school rankings, stating that "publications that rank colleges or law schools purportedly rely on objective criteria (*e.g.*, acceptance rates, test scores, class size, endowment), but selecting those criteria involves subjective decision-making."  *Id.*

USC relied heavily on *Ariix* in its prior motion to dismiss, arguing that because school rankings have been deemed statements of opinion by the Ninth Circuit, USC could not be held liable for its promotion of US News' rankings in this case.  The Court rejected that argument and allowed the claims against USC to proceed.  In distinguishing *Ariix*, the Court highlighted that Plaintiffs' allegations in this case:

> do not target US News' *selection* or *weighing* of the objective criteria which determine the rankings. . . . Instead, Plaintiffs claim that Defendants knowingly *reported false data* to US News.  Those underlying data are entirely falsifiable, and the weight that they were to be assigned by US News was predetermined.  The fact that such data were considered alongside other subjective considerations to produce a final ranking does not render USC's promotion of the allegedly fraudulently obtained ranking non-actionable.  As Plaintiffs note, if the law were otherwise, "any business that submits false information to get a certification . . . could not be held liable because each of those certifications would have at their core a methodology based on an opinion as to which data points should be considered."

---

[11] As discussed *infra*, 2U also argues that it may not be held liable for any of these statements because they were made by USC.

Order at 7-8 (footnote and citation omitted).

Predictably, the parties read the Court's discussion of *Ariix* quite differently.  2U asserts that the Court's decision to allow the claims against USC to proceed hinged upon the allegations that USC *fraudulently* and *knowingly* submitted false data.  Absent similar allegations that 2U participated in the submission of the false data or otherwise had knowledge of the falsity, 2U argues that the Court's reasoning no longer applies, bringing Plaintiffs' claims squarely within the ambit of *Ariix*.  2U thus construes the Court's decision as an articulation of the "well-established exception" to the rule that statements of opinion are not actionable "if 'the speaker has knowledge of facts not warranting the opinion.'"  *PhotoMedex, Inc. v. Irwin*, 601 F.3d 919, 931 (9th Cir. 2010) (quoting *Richard P. v. Vista Del Mar Child Care Serv.*, 106 Cal. App. 3d 860, 866 (1980)).  Plaintiffs, on the hand, focus on the Court's language distinguishing *Ariix* on the basis that their claims "do not target US News' *selection* or *weighing* of the objective criteria which determine the rankings," Order at 7, but instead are centered on the falsifiable data which underlie the rankings.  Given that distinction, Plaintiffs maintain, the absence of allegations that 2U participated in or had affirmative knowledge of the misreporting of data is immaterial:  The rankings are, for purposes of Plaintiffs' claims against both Defendants, not statements of opinion, and 2U can be held liable for its promotion of them just as it would any other misrepresentation (*i.e.*, without showing knowledge of the falsity).

Although the parties' confusion is understandable, 2U is correct that underlying the Court's reasoning (and indeed explicitly noted in the above-quoted passage) was the basic premise that USC *knowingly* reported false data.  It was for that reason that the Court granted 2U's motion to dismiss, noting that "Plaintiffs have not provided sufficient facts to infer 2U's knowledge of the falsity."  *Id.* at 12.  To proceed on their claims against 2U, then, Plaintiffs must allege that 2U also knew of that falsity or lacked a good faith belief in the accuracy of the rankings.

Neither party has cited a case brought under California's consumer protection statutes which addresses these precise issues.  Nevertheless, courts have considered the extent of liability for opinion statements in a variety of other contexts (*e.g.*, common law fraud, negligent misrepresentation, defamation, false advertising under the Lanham Act, and violation of federal securities laws).  The resulting bodies of case law are consistent with one another and reveal a few common threads that the Court finds instructive here. *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus. Pension Fund*, 575 U.S. 175, 192 n.9 (2015) (citing the Restatement of Torts in

securities misrepresentation case, noting that while "Section 11 [of the Securities Act of 1933] is, of course, 'not coextensive with common-law doctrines of fraud' . . . , we may still look to the common law for its insights into how a reasonable person understands statements of opinion").

First, as 2U points out, ratings and rankings like the ones US News publishes are almost universally treated as statements of opinion. *See, e.g.*, *Ariix*, 985 F.3d 1121 (Lanham Act); *NetScout Sys., Inc. v. Gartner, Inc.*, 334 Conn. 396, 414-22 (2020) (defamation); *Plumbers' Union Loc. No. 12 Pension Fund v. Nomura Asset Acceptance Corp.*, 632 F.3d 762, 775 (1st Cir. 2011) (securities laws). The reasoning underlying these decisions is that "a reasonable observer understands that placement on and ranking within the bulk of such lists constitutes opinion, not a provable fact." *Seaton v. TripAdvisor LLC*, 728 F.3d 592, 600 (6th Cir. 2013). Moreover, "even if [one] could draw any fact-based inferences from [the] rating, such inferences could not be proven false because of the inherently subjective nature of [the] ratings calculation." *Compuware Corp. v. Moody's Invs. Servs., Inc.*, 499 F.3d 520, 529 (6th Cir. 2007). The Court broadly agrees with that reasoning and thus construes the US News rankings as statements of opinion.

That does not necessarily end the inquiry, however. Another common thread in the case law is that while statements of opinion are generally not actionable, exceptions exists when the one stating the opinion has special information/expertise or knows of facts not warranting the opinion. For example, in the context of common law fraud, there are "two exceptions to the rule that expressions of opinion are not actionable: (1) "if the party expressing it does not honestly entertain that opinion," and (2) "the party making the false representation of opinion has superior knowledge or special information." *Ogier v. Pac. Oil & Gas Dev. Corp.*, 132 Cal. App. 2d 496, 506-07 (1955). Similarly, under the law of negligent misrepresentation, "when a party possesses or holds itself out as possessing superior knowledge or special information or expertise regarding the subject matter and a plaintiff is so situated that it may reasonably rely on such supposed knowledge, information, or expertise, the defendant's representation may be treated as one of material fact." *Bily v. Arthur Young & Co.*, 3 Cal. 4th 370, 408 (1992); *see also Anschutz Corp. v. Merrill Lynch & Co. Inc.*, 785 F. Supp. 2d 799, 824-25 (N.D. Cal. 2011) ("[W]hether treated as a statement of material fact under *Bily* or considered an actionable opinion under *Ogier*, [the plaintiff] may bring negligent misrepresentation claims against [the defendants] if plaintiff alleges that the [defendants] did not honestly entertain the opinions about the ratings at the time they were issued."). And under Section 11 of the Securities Act of 1933, liability for material

misrepresentations contained in opinion statements requires alleging "both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 615 (9th Cir. 2017) (quoting *Omnicare*, 575 U.S. at 185-86).[12]   The rationale for these exceptions is that an "'expression of an opinion may carry with it an implied assertion, not only that the speaker knows no facts which would preclude such an opinion, but that he does know facts which justify it.' That is especially (and traditionally) the case . . . where . . . a speaker 'holds himself out or is understood as having special knowledge of the matter which is not available to the plaintiff.'" *Omnicare*, 575 U.S. 191-92 (quoting W. Keeton et al., Prosser and Keeton on the Law of Torts § 109 at 760-61 (5th ed. 1984)).

The Ninth Circuit's articulation in *PhotoMedex* of the "well-established exception" based on the speaker's "knowledge of facts not warranting the opinion" is another articulation of these general principles.  601 F.3d at 931 (second quote quoting *Richard P.*, 106 Cal. App. 3d at 866). *PhotoMedex* involved false advertising claims under the Lanham Act, FAL, and UCL.  Among the representations at issue were the defendants' statements regarding the anticipated release date of their product, the Pharos laser.  *See id.*  The district court interpreted those predictions as "mere statements of opinion regarding future events, which are generally not actionable," and accordingly granted summary judgment in favor of the defendants.  *Id.*  The Ninth Circuit, however, vacated summary judgment on the grounds that "a statement known at that time by the speaker to be false, or a statement by a speaker who lacks a good faith belief in the truth of the statement, may constitute an actionable misrepresentation."  *Id.*  Thus, the court concluded, the defendants could be held "liable for misrepresentation if they said that the Pharos would be available in August 2003 but *knew* that it would not or could not actually be available until a substantially later date."  *Id.* (emphasis added); *see also id.* at 932 (finding triable issue of fact as to "whether Defendants *intentionally* misrepresented the Pharos's release date" (emphasis added)).

The Court finds *PhotoMedex* applicable in this case – albeit with one slight wrinkle.  Unlike in *PhotoMedex*, Defendants here did not *themselves* form the challenged opinion – US News did.  Thus, Plaintiffs are seeking to hold Defendants liable for merely repeating the opinion of another.

---

[12] In the securities context, "pleading falsity by alleging that 'there is no reasonable basis for the [opinion statement]' is permissible only under an omissions theory of liability."  *Id.* at 616.  Plaintiffs previously disclaimed that they were pursuing a pure omissions theory, and they put forth no argument on that issue here.  Further, even if Plaintiffs were to proceed on an omissions theory, they would likely still need to plead knowledge under *Wilson*.

That distinction should not fundamentally alter the analysis, however.  Just as a reasonable consumer could construe US News' own statement of opinion as implying that it had some basis for the opinion, a reasonable consumer could also construe Defendants' affirmation of US News' opinion as implying that Defendants held some good faith belief in its accuracy (*i.e.*, that it was not fraudulently obtained).

Indeed, this very issue has arisen in the context of residential mortgage-backed securities ("RMBS") litigation.  The plaintiffs in those cases, purchasers of certificates in RMBS, asserted claims against the banks for making material misstatements or omissions in their offering documents.  Among the alleged misstatements were the banks' accurate reporting of credit ratings assigned by third-party credit rating agencies, which the plaintiffs claimed were based on false or misleading underlying data.  In response to arguments by the banks that the credit ratings were nonactionable statements of opinion, courts have held that the banks could still be held liable for accurately repeating such statements if it was alleged that they "procured the false ratings by [the] provision of misleading information," *Assured Guar. Mun. Corp. v. UBS Real Estate Sec., Inc.,* No. 12 CV 1579(HB), 2012 WL 3525613, at *5 (S.D.N.Y. Aug. 15, 2012), or "knew that the underlying data was faulty and so . . . there was no real basis for the credit ratings," *Cap. Ventures Int'l v. J.P. Morgan Mortg. Acquisition Corp.*, No. CIV.A. 12-10085-RWZ, 2013 WL 535320, at *6 (D. Mass. Feb. 13, 2013).  *See also In re Countrywide Fin. Corp. Mortg.-Backed Sec. Litig.*, 932 F. Supp. 2d 1095, 1113 n.13 (C.D. Cal. 2013) ("Accurately reporting a credit rating that Countrywide knew was based on false information is a misstatement for purposes of Section 11."); *In re Bear Stearns Mortg. Pass-Through Certificates Litig.*, 851 F. Supp. 2d 746, 770-71 (S.D.N.Y. 2012) ("Here, there are two 'speakers': the agencies that rated the Certificates, and Defendants, who presented those ratings to investors in the Offerings Documents.  Thus, Plaintiffs can state a claim by pleading that the Rating Agencies *or* Defendants did not believe that the ratings accurately reflected the quality of the securities.").

Based on the foregoing analysis, the Court concludes that to state a claim for misrepresentation against 2U, Plaintiffs must allege that Defendants had "knowledge of facts not warranting [US News'] opinion" or lacked "a good faith belief in the truth of the statement." *PhotoMedex*, 601 F.3d at 931 (first quote quoting *Richard P.*, 106 Cal. App. 3d at 866).  Plaintiffs have met that standard as to USC by alleging that USC itself provided the false data to US News. The same cannot be said for 2U, however.  The Court previously found that Plaintiffs' allegations

against 2U "f[e]ll short of pleading that 2U in fact knew the submission of data to US News was false or that the ranking was fraudulently obtained."  Order at 12-13.  Rather than shore up those allegations in their amended complaints, Plaintiffs have instead taken the opposite approach, now faulting 2U for merely failing to investigate or learn of the falsity.  *See, e.g.*, SAC ¶ 97 ("2U should have discovered through the exercise of reasonable care the discrepancy between USC Rossier's actual student selectivity data, on the one hand, and the fraudulently manipulated data that USC Rossier submitted to US News, on the other hand."), ¶ 177 ("At a minimum, 2U engaged in the aforementioned acts negligently.").  As explained, such allegations of negligence are insufficient.

Plaintiffs place a great deal of emphasis on the fact that specific knowledge of the falsity is not a required element under California's consumer protection statutes and instead mere negligence suffices.  But the *mens rea* requirement under the statutes addresses a separate issue.  Although Plaintiffs are correct that the negligent dissemination of a *false statement of fact* would suffice, Plaintiffs do not allege that 2U's advertisements were literally false, nor could they.  The question here, therefore, is whether 2U's advertisements are even actionable in the first instance – *i.e.*, are they misleading because they imply any false assertions upon which a reasonable consumer could rely?  In most instances involving statements of opinion, the answer to that question will be "no."  In some cases, however, a statement of opinion may "reasonably 'be interpreted . . . as an implied statement' that the speaker 'knows facts sufficient to justify him in forming' the opinion, or that he at least knows no facts 'incompatible with [the] opinion.'"  *Omnicare*, 575 U.S. 191 (quoting Restatement (Second) of Torts § 539, p. 85 (1976)).  If and only if that implied statement is false – and the speaker *does* know of undisclosed fact incompatible with the opinion – is the opinion is misleading.  In other words, requiring that Plaintiffs allege knowledge of the falsity underlying US News' opinions in not contradicted by the absence of a *mens rea* requirement under the statutes; indeed, the same was true in *PhotoMedex*.

### 3.  Joint/Secondary Liability

Plaintiffs also invoke a theory of joint liability, seeking to hold 2U liable based on its role in the advertising campaign as a whole.  2U argues that Plaintiffs have not pled sufficient facts to support such a theory.

It is well-settled that liability under the UCL "cannot be predicated on vicarious liability." *Emery v. Visa Internat. Serv. Ass'n*, 95 Cal. App. 4th 952, 960 (2002).  Instead, "[a] defendant's liability must be based on his personal 'participation in the unlawful practices' and 'unbridled

control' over the practices that are found to violate [the UCL] or [FAL]." *Id.* (quoting *People v. Toomey*, 157 Cal. App. 3d 1, 14 (1984)). District courts have applied the same standard under the CLRA. *See In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 656 (S.D. Cal. 2014) ("Similarly, under the CLRA, absent allegations of participation or control, defendants cannot be held secondarily liable for the acts of third parties."); *In re Jamster Mktg. Litig.*, No. 05CV0819 JM (CAB), 2009 WL 1456632, at *9 (S.D. Cal. May 22, 2009); *Sawyer v. Bill Me Later, Inc.*, No. CV 10-04461 SJO (JCGx), 2010 WL 11492736, at *10 (C.D. Cal. Dec. 14, 2010). In determining whether *Emery*'s "personal participation" and "unbridled control" prongs have been met, courts have focused on various factors such as whether the defendant: (1) "issued [its] own advertisements" or merely repeated the deceptive statements of another, *In re Hydroxycut Mktg. & Sales Pracs. Litig.*, 299 F.R.D. 648, 656 (S.D. Cal. 2014); (2) "controlled the language" or "reviewed or monitored the representations" made by another, *Reed v. NBTY, Inc.*, No. EDCV 13-0142 JGB (OPx), 2014 WL 12284044, at *11 (C.D. Cal. Nov. 18, 2014); or (3) had notice of the violating conduct, *see Hanna v. Walmart Inc.*, No. 5:20-cv-01075-MCS-SHK, 2020 WL 7345680, at *5 (C.D. Cal. Nov. 4, 2020).

In support of their joint liability theory, Plaintiffs rely primarily on provisions of the services agreement between 2U and USC. They point out that under the agreement, "USC was required to (1) market the online programs 'in a manner comparable to' the in-person programs; (2) 'consult with [2U] in the development of additional Promotional Strategies'; and (3) provide 2U 'with access to information pertaining to both classroom-based and online students' admissions, performance, and post-graduation outcomes.'" Opp. at 13-14 (citations omitted). According to Plaintiffs, these provisions – coupled with 2U's financial incentive in ensuring the success of the programs – demonstrate that 2U and USC engaged in "an extensive, joint campaign" to advertise the US News rankings. Opp. at 13.

Plaintiffs liken this case to *Dorfman v. NutraMax Labs., Inc.*, No. 13-cv-0873-WQH, 2013 WL 5353043 (S.D. Cal. Sep. 23, 2013), in which the court allowed to proceed claims against two defendant-retailers who marketed and sold the products of the defendant-manufacturer. The court found the plaintiff's allegations that the retailers "entered into marketing and sales agreements" with the manufacturer, "provided pictures of the false and deceptive packing and labeling," and made "statements on their websites that repeat and reinforce the false and misleading statements," were sufficient under the *Emery* test. *Id.* at *14 (cleaned up). Plaintiffs' reliance on *Dorfman*,

18

however, is misplaced.  For one thing, several courts have distinguished *Dorfman* and/or have declined to adopt a broad reading of it like the one Plaintiffs suggest here.  *See, e.g.*, *In re Hydroxycut*, 299 F.R.D. at 657 ("To the extent that *Dorfman* can be read as holding that a retailer defendant who disseminates or repeats deceptive statements can be held liable under the UCL and CLRA for statements on product packaging that the retailer did not control, the Court disagrees with *Dorfman*.").  More importantly, the retailer defendants in *Dorfman* were alleged to have made misleading statements *on their own websites*.  Here, by contrast, while Plaintiffs vaguely reference 2U's "dissemination" of USC's advertisements (including by purchasing search terms from Google and "invest[ing] in advertising via display ad networks"), *see* SAC ¶¶ 80, 110, 147, they fail to allege that 2U actually issued or authored any of the advertisements upon which Plaintiffs relied.  *See In re Hydroxycut*, 299 F.R.D. at 656 (dismissing claims where the plaintiffs failed to allege that "they saw/heard a specific representation made, adopted, or controlled by a Retailer Defendant"); *Reed*, 2014 WL 12284044, at *11 (granting summary judgment where third party "had substantial discretion as to the claims made on its website, could write its own content without Defendants' oversight, and had exclusive control over some of the areas which contained the challenged statements").

The mere fact that under the agreement, *USC* was required to market the online programs "in a manner comparable to" the in-person programs and "consult with [2U] in the development of *additional* Promotional Strategies" does not show that *2U* controlled the statements at issue here.  *See Musgrave v. Taylor Farms Pac., Inc.*, No. 18-CV-02841-JSW, 2019 WL 8230850, at *7 (N.D. Cal. Feb. 20, 2019) ("Although [plaintiff] alleges that the Retail Defendant and the Taylor Farms Defendants had marketing agreements, he does not include any facts to suggest that the Retail Defendants had any involvement in what statements were placed on the products packaging.").  In fact, Plaintiffs acknowledge that "USC maintained the main Rossier website" where the allegedly misleading statements were posted.  SAC ¶¶ 47, 87.  Similarly, the services agreement states that any marketing materials 2U made were "subject to USC's written approval prior to any use."  *Id.* Ex. A § 1(A).  Accordingly, Plaintiffs' reliance on the terms of the services does not satisfy the *Emery* test.  Nor, for all the reasons discussed in the previous section, have Plaintiffs adequately alleged that 2U was on notice of the violating conduct (*i.e.*, the rankings fraud).[13]  *See Hanna*, 2020 WL 7345680, at *6 (dismissing claim for failure to allege that retailer

---

[13] Any theory of aiding and abetting liability would fail for the same reason.  *See In re Hydroxycut*, 299 F.R.D. at

"was on notice of the allegedly unfair business practices").

## IV.  <u>Conclusion</u>

Because Plaintiffs have not sufficiently alleged that the statements at issue are actionable against 2U, or that 2U exercised control over the statements made by USC, the Court dismisses Plaintiffs' claims under the FAL, UCL,[14] and CLRA.  Plaintiffs will be granted leave to amend to cure the above-noted deficiencies.  Plaintiffs may file amended complaints within twenty-one days of this order.

---

657 ("[L]iability for aiding and abetting a tort normally requires that the individual have actual knowledge of the specific primary wrong that he is substantially assisting.").

[14] Plaintiffs maintain that their claim based on violation of the UCL's "unfair" prong should survive notwithstanding the deficiencies noted above.  However, Plaintiffs have not alleged an independent basis for such a claim that is not premised on the same alleged misrepresentations the Court has found to be nonactionable.  *See Punian v. Gillette Co.*, No. 14-CV-05028-LHK, 2016 WL 1029607, at *17 (N.D. Cal. Mar. 15, 2016) (dismissing claim under the unfair prong which "overlaps entirely with Plaintiff's claims under the FAL and the CLRA").