SHOOK, HARDY & BACON L.L.P.
Michael L. Mallow (SBN 188745)
mmallow@shb.com
Mark. D. Campbell (SBN 180528)
mdcampbell@shb.com
Nalani L. Crisologo (SBN 313402)
ncrisologo@shb.com
2049 Century Park East, Suite 3000
Los Angeles, California 90067
Telephone: 424-285-8330
Facsimile: 424-204-9093

Holly Pauling Smith (admitted *pro hac vice*)
hpsmith@shb.com
Taylor B. Markway (admitted *pro hac vice*)
tmarkway@shb.com
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone: 816-474-6550
Facsimile: 816-421-5547

Attorneys for Defendant
University of Southern California

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IOLA FAVELL, SUE ZARNOWSKI, MARIAH CUMMINGS, and AHMAD MURTADA, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA and 2U, INC.,<br><br>Defendants. | Case No. 2:23-cv-00846-GW-MAR<br><br>Assigned to: Hon. George H. Wu<br><br>**DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S NOTICE OF MOTION AND MOTION TO EXCLUDE OPINIONS & TESTIMONY OF PLAINTIFFS' EXPERT WITNESS JOHN CHANDLER**<br><br>Date: October 24, 2024<br>Time: 8:30 a.m.<br>Ctrm: 9D |

# MOTION AND NOTICE OF MOTION

TO ALL PARTIES AND THEIR COUNSEL OF RECORD:

PLEASE TAKE NOTICE that on October 24, 2024, at 8:30 a.m., or as soon thereafter as the matter may be heard, in Courtroom 9D of the First Street Courthouse, located at 350 West 1st Street, Los Angeles, California, 90012, Defendant University of Southern California ("USC") will, and hereby does, move the Court for an order excluding the exposure opinions and testimony of Plaintiffs' expert Dr. John Chandler for purposes of class certification, summary judgment, and trial.

This motion is based on this Notice of Motion, the Memorandum of Points and Authorities, the referenced Exhibits and case filings, and such argument as the Court may allow.

This motion is made following the videoconference of counsel under L.R. 7-3, which took place on September 6, 2024.

Dated: September 13, 2024                Respectfully submitted,

**SHOOK HARDY & BACON L.L.P.**


By: /s/ *Michael L. Mallow*
Michael L. Mallow
**Attorney for Defendant**
**University of Southern California**

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiffs' expert Dr. John Chandler offers several "exposure" opinions, asserting that prospective students, to varying degrees, were exposed to representations that USC's Rossier School of Education ("Rossier") was highly ranked in U.S. News & World Report's ("US News") "Best Graduate Schools of Education" rankings via emails, webpages, and other marketing channels.  Chandler, however, has not actually performed any quantitative analysis to support his conclusory opinions.  His opinion regarding email exposure is directly contradicted by the evidence, and his opinions regarding exposure by webpages and other channels are founded on nothing more than his own speculation.  Because none of Chandler's exposure opinions are based on sufficient facts or data, USC respectfully requests this Court exclude such opinions in accordance with Federal Rule of Evidence 702(b).

## BACKGROUND

Plaintiffs bring a putative class action against USC, alleging that Rossier's high ranks on U.S. News's annual list of "Best Graduate Schools of Education" were inflated by Rossier's misreporting of data to US News.  *See* Dkt. 67.  Plaintiffs allege USC "disseminated, and/or caused to be made or disseminated a long term advertising campaign to the public, including to Plaintiffs and the class, regarding USC Rossier's status as a school with in-person and online degree programs that are highly ranked by US News." *Id.* at ¶ 175.  Plaintiffs further theorize that "hundreds of students each year … were driven [to attend Rossier] by the false perception that USC Rossier is a 'top-ranked' program." *Id.* at ¶ 110.

Plaintiffs retained Chandler to opine on "[t]he scope of [Rossier's] recruitment practices, specifically, the portion of matriculating students from 2013 through to [*sic*] 2022 who were recruited for the program with online advertising that made use of fraudulent rankings." **Exhibit ("Ex.") 1**, Chandler Report, p. 3.  Chandler suggests he intended to "estimate the fraction of matriculating students who were exposed to the

1  fraudulent rankings promoted by" Rossier with a "quantitative estimate [that] focuses
2  on two primary sources of exposure: email campaigns and web pages." *Id.* at p. 80.
3        As it turns out, however, Chandler was "unable to quantify the number of
4  prospective students or students who [were] exposed." **Ex. 2**, Chandler Deposition,
5  p. 278:23-25; **Ex. 1**, p. 82 (stating he did "not have reliable site traffic figures," so his
6  "argument for the exposure via websites must be qualitative"). Nevertheless, Chandler
7  opines that "all or virtually all prospective students were exposed to the fraudulent
8  rankings through … emails" and that a "vast majority of matriculating students" were
9  exposed to ranking representations by visiting Rossier's webpages. **Ex. 1**, p. 81-82. In
10 addition to emails and webpages, Chandler opines—but does "not quantitatively
11 estimate[]"—that "several other marketing channels contributed significantly to the
12 exposure of prospective students to USC's fraudulent rankings," including "social
13 media, print marketing, and online media." *Id.* at p. 83-84.

## **LEGAL STANDARD**

15       This Court acts as a "gatekeeper" for expert testimony, ensuring the proposed
16 expert's testimony "both rests on a reliable foundation and is relevant to the task at
17 hand." *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 597 (1993); *see also*
18 *Grodzitsky v. Am. Honda Motor Co., Inc.*, 957 F.3d 979, 984 (9th Cir. 2020) ("In
19 evaluating challenged expert testimony in support of class certification, a district court
20 should evaluate admissibility under the standard set forth in *Daubert*….")
21 (quotations/brackets omitted). Before a person can be "cloaked with the mantle of an
22 expert," "care must be taken to assure that [the] proffered witness truly qualifies as an
23 expert, and that such testimony meets the requirements of Rule 702." *Jinro Am. Inc. v.*
24 *Secure Invs., Inc.*, 266 F.3d 993, 1004 (9th Cir. 2001).
25       Plaintiffs have the burden of proving that Chandler's testimony is admissible
26 under Federal Rule of Evidence 702. *Cooper v. Brown*, 510 F.3d 870, 942 (9th Cir.
27 2007). Rule 702 provides:
28

A witness who is qualified as an expert by knowledge, skill, experience, training, or education may testify in the form of an opinion or otherwise if the proponent demonstrates to the court that it is more likely than not that:

(a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;

(b) the testimony is based on sufficient facts or data;

(c) the testimony is the product of reliable principles and methods; and

(d) the expert's opinion reflects a reliable application of the principles and methods to the facts of the case.

"Rule 702 was amended recently to clarify and emphasize that expert testimony may not be admitted unless the proponent demonstrates to the court that it is more likely than not that the proffered testimony meets the admissibility requirements set forth" in the Rule. *Boyer v. City of Simi Valley*, No. 19-CV-00560, 2024 WL 993316, at *1 (C.D. Cal. Feb. 13, 2024) (quotations omitted). "[P]revious holdings that the critical question of the sufficiency of an expert's basis, and the application of the expert's methodology, are questions of weight and not admissibility are an incorrect application of Rules 702 and 104." *Id.* (quotations omitted). "The Court is required to analyze the expert's data and methodology at the admissibility stage more critically than in the past." *Id.*

"Opinion evidence is only as good as the facts upon which it is based." *State of Washington v. United States*, 214 F.2d 33, 43 (9th Cir. 1954). "Federal Rule of Evidence 702(b) permits the introduction of expert testimony only if the testimony is based on sufficient facts or data." *Stephens v. Union Pac. R.R. Co.*, 935 F.3d 852, 856 (9th Cir. 2019) (quotations omitted). "The expert's opinion must rest on facts or data in the case that the expert has been made aware of or personally observed, not merely assumptions and speculation." *Id.* (quotations omitted). Expert testimony based on "unsubstantiated and undocumented information" is inadmissible. *City of Pomona v. SQM N. Am. Corp.*, 750 F.3d 1036, 1044 (9th Cir. 2014) (quotations omitted). Expert

testimony is also "inadmissible when the facts upon which the expert bases his testimony contradict the evidence." *Greenwell v. Boatwright*, 184 F.3d 492, 497 (6th Cir. 1999); *see also Rebel Oil Co., Inc. v. Atlantic Richfield Co.*, 51 F.3d 1421, 1436 (9th Cir. 1995).

## ARGUMENT

### I. Chandler's Opinion Concerning Prospective Students' Exposure to Emails Has No Factual Basis and Contradicts the Evidence.

The foundation of Chandler's opinion that "all or virtually all prospective students were exposed to the fraudulent rankings through … emails" is his belief that "[a]ll prospective students were added to drip email campaigns managed by 2U, which, as confirmed by 2U's representative, included the fraudulent ranking information." **Ex. 1**, p. 80-82. In fact, all prospective students were *not* added to drip email campaigns. Chandler appears to believe that every person who started an online application with Rossier was added to drip email campaigns. **Ex. 2**, p. 161:15-162:12.

That is not the case. Such emails were sent "only to people who had opted in to receive information about the program," *i.e.*, those who "fil[led] out the request for information form" on the Rossier online website. **Ex. 3**, Gerber Deposition, p. 109:9-10, 22-23. In other words, the only prospective students who received the emails were those who affirmatively opted in to "these email campaigns" and did not "unsubscribe." *Id.* at p. 114:7-10. As a result, "not every individual would receive all of these e-mails." *Id.* at p. 109:13-14. For example, students who were "direct apply" (meaning they filled out an application without filling out a request for information form) would not have received these emails. *Id.* at p. 53:25-54:11. The 2U representative referenced by Chandler "couldn't speculate" as to "a percentage that opted in" to the email campaigns, or, out of those that initially opted in, a percentage that unsubscribed. *Id.* at p. 114:11-12; *see also id.* at p. 48:1-8. Neither can Chandler. **Ex. 1**, p. 82 (admitting he cannot do a quantitative analysis of students who received the emails); **Ex. 2**, p. 278:23-25 ("I'm unable to quantify the number of students who [were] exposed.").

Moreover, simply because a prospective student received one or more of the subject emails does not mean that he or she was thereby exposed to a ranking representation. For one, many recipients did not open the emails. Chandler cites an internal USC document that notes a particular email was opened by 49% of recipients. **Ex. 1**, p. 36. This less-than-half open rate was described as "impressive," suggesting most emails were not opened by anywhere near a majority of recipients. *Id.*

It is also unclear which, if any, of the emails contained a ranking representation. Chandler reasons that 2U's representative was "unequivocal" that every prospective student who opted in received an initial (or "welcome") email that contained a ranking representation. **Ex. 2**, p. 220:8-11; *see also* **Ex. 1**, p. 81. But that is not true. The 2U representative very much equivocated, stating only that "[i]t would surprise [her] if it was not part of the initial e-mail." **Ex. 3**, p. 113:18-19. In any event, Chandler does not know "what the open rates were on the welcome e-mail." **Ex. 2**, p. 223:19-20.

Accordingly, there is no factual basis whatsoever for Chandler's opinion that "all or virtually all prospective students were exposed to the fraudulent rankings through these emails." **Ex. 1**, p. 82. Such opinion also "contradict[s] the evidence." *See Greenwell*, 184 F.3d at 497. Not only is Chandler mistaken that the emails were sent to every prospective student, but Plaintiff Iola Favell has even confirmed that she was not exposed to a ranking representation via email. **Ex. 4**, Favell Deposition, p. 113:11-21.

**II. Chandler's Opinion Concerning Prospective Students' Exposure to Webpages is Not Based on Any Facts or Data.**

Chandler's opinion that a "vast majority of matriculating students" were exposed to a ranking representation on Rossier's webpages similarly is not based on any facts or data. **Ex. 1**, p. 81. Chandler admits he does "not have reliable site traffic figures" (*id.* at p. 82), he cannot say how many prospective students visited the subject webpages, and he does not "have data to confirm" that visitors to the subject webpages "would have seen the ranking on that page." **Ex. 2**, p. 238:5-7, 241:5-18.

Rather than rely on facts and data, Chandler cites "commonsense … to assume" that "[s]tudents who were serious about Rossier … were likely to visit many of these pages." **Ex. 1**, p. 81, 83; *see also id.* at p. 82-83 (explaining the lack of data prevented him from "arriving at an estimate of the number of students who saw the fraudulent rankings on these sites," so his "argument for exposure via websites must be qualitative"). This is pure, inadmissible ipse dixit, *i.e.*, a "bare assertion," *United States v. Barnes*, 295 F.3d 1354, 1362 (D.C. Cir. 2002), or a "'because I said so' conclusion." *Laux v. Mentor Worldwide, LLC*, 295 F. Supp. 3d 1094, 1103 (C.D. Cal. 2017). Chandler cannot rely on his "personal opinions and speculation rather than on a systematic assessment of" the webpage visits by prospective students. *See Ollier v. Sweetwater Union High Sch. Dist.*, 768 F.3d 843, 861 (9th Cir. 2014) (quotations omitted); *see also Gen. Elec. Co. v. Joiner*, 522 U.S. 136, 146 (1997) ("But nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert. A court may conclude that there is simply too great an analytical gap between the data and the opinion proffered."); *Townsend v. Monster Beverage Corp.*, 303 F. Supp. 3d 1010, 1032 (C.D. Cal. 2018) ("Plaintiffs fail to show that Dr. Maronick's assumption that energy drink consumers are energy drink purchasers is grounded in anything other than his unsupported speculation.").

Further, even if Chandler's opinion were truly a matter of "commonsense," it would still be inadmissible because it would be unhelpful. *See United States v. Rahm*, 993 F.2d 1405, 1413 (9th Cir. 1993) (explaining expert testimony cannot address "areas believed to be within the jurors' common understanding"); *Alves v. Riverside Cty.*, No. 19-CV-2083, 2023 WL 2983583, at *11 (C.D. Cal. Mar. 13, 2023) ("The Ninth Circuit instructs district courts to guard from expert elucidation areas believed to be within the jurors' common understanding, and exercise their discretion to exclude an opinion that concerns a subject improper for expert testimony, for example, one that invades the province of the jury.") (cleaned up); *AFMS LLC v. United Parcel Serv. Co.*, No. 10-

CV-5830, 2014 WL 12515335, at *4 (C.D. Cal. Feb. 5, 2014) ("It is well established that expert testimony is not helpful if it simply addresses lay matters which the jury is capable of understanding and deciding without the expert's help.") (quotations omitted).

### III. Chandler's Opinion Concerning Prospective Students' Exposure to "Other Channels" is Not Based on Any Facts or Data.

Likewise, Chandler's opinion that "other channels"—*e.g.*, social media, print marketing, and online media—"contributed significantly" to exposure is not based on any facts or data. **Ex. 1**, p. 83. Chandler failed to perform any quantitative analysis of exposure for these other channels, so he has no way of knowing how much or how little these "other channels" contributed to prospective students being exposed to the ranking representations. *Id.* at p. 84. He does not know, for example, how many prospective students, if any, actually saw the subject social media posts. **Ex. 2**, p. 213:1-7, 214:13-215:14, 251:13-19. His "other channels" opinion is "unsupported by the record or any analysis other than broad generalizations from general marketing and advertising principles." *See Ono v. Head Racquet Sports USA, Inc.*, No. 13-CV-4222, 2016 WL 6647949, at *11 n.10 (C.D. Cal. Mar. 8, 2016) (rejecting expert's advertising exposure opinion). In fact, the very last sentence of Chandler's report confirms he is only speculating: "These additional channels ensure that, if a student somehow avoided the rankings via [emails and webpages], *they might well have been exposed* via these other, non-quantifiable channels." **Ex. 1**, p. 84 (emphasis added).

And, much like Chandler's webpage opinion, even if a quantitative analysis were somehow unnecessary to support this "other channels" opinion due to a common understanding of how online/social media works (*see* **Ex. 2**, p. 252:1-24), that would simply mean that Chandler's opinion is unhelpful and thus inadmissible. *See Rahm*, 993 F.2d at 1413; *Alves*, 2023 WL 2983583, at *11; *AFMS*, 2014 WL 12515335, at *4.

# CONCLUSION

For the foregoing reasons, USC respectfully requests this Court exclude the exposure opinions and testimony of Plaintiffs' expert Dr. John Chandler for purposes of class certification, summary judgment, and trial.

Dated: September 13, 2024

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: /s/ *Michael L. Mallow*
      Michael L. Mallow

**Attorney for Defendant
University of Southern California**

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for the University of Southern California certifies that this brief contains 2,417 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *Michael L. Mallow*
      Michael L. Mallow