SHOOK, HARDY & BACON L.L.P.
Michael L. Mallow (SBN 188745)
mmallow@shb.com
Mark. D. Campbell (SBN 180528)
mdcampbell@shb.com
Nalani L. Crisologo (SBN 313402)
ncrisologo@shb.com
2121 Avenue of the Stars, Suite 1400
Los Angeles, California  90067
Telephone:   424-285-8330
Facsimile:    424-204-9093

Holly Pauling Smith (admitted *pro hac vice*)
hpsmith@shb.com
Taylor B. Markway (admitted *pro hac vice*)
tmarkway@shb.com
2555 Grand Boulevard
Kansas City, Missouri 64108
Telephone:   816-474-6550
Facsimile:    816-421-5547

Attorneys for Defendant
University of Southern California

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| IOLA FAVELL, SUE ZARNOWSKI, MARIAH CUMMINGS, and AHMAD MURTADA, *on behalf of themselves and all others similarly situated*,<br><br>Plaintiffs,<br><br>vs.<br><br>UNIVERSITY OF SOUTHERN CALIFORNIA and 2U, INC.,<br><br>Defendants. | Case No. 2:23-cv-00846-GW-MAR<br><br>Assigned to: Hon. George H. Wu<br><br>**DEFENDANT UNIVERSITY OF SOUTHERN CALIFORNIA'S REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS & TESTIMONY OF PLAINTIFFS' EXPERT WITNESS JOHN CHANDLER**<br><br>Date:       October 24, 2024<br>Time:       8:30 a.m.<br>Ctrm:       9D |

# MEMORANDUM OF POINTS AND AUTHORITIES

# INTRODUCTION

Plaintiffs' Opposition confirms there is no factual basis for Chandler's opinions regarding email, webpage, and "other channels" exposure. Plaintiffs' defense of Chandler's email opinion suffers from the same factual flaw as Chandler's opinion itself. It simply is not true, as Plaintiffs argue, that all prospective students were included in a drip email campaign. Rather, only those who filled out a request for information form received the subject emails, and that pool of prospective students did ***not*** include every person who started an application. This is precisely why even the 2U representative cannot say, without speculating, what percentage of prospective students received the subject emails. *See* Doc. 144-3, p. 114:3-12. Plaintiffs' insistence that Chandler can conclude what the 2U representative cannot, *i.e.*, that "all" prospective students were exposed via emails, has no basis in fact.

As for webpages and "other channels," Plaintiffs—like Chandler—fail to cite anything beyond general marketing principles to support Chandler's opinions. Chandler admittedly lacked data necessary to conduct any quantitative analysis for these opinions; therefore, he has no basis in fact to conclude a "vast majority of matriculating students" were exposed via webpages or that "other channels" "contributed significantly" to exposure.

# LEGAL STANDARD

Plaintiffs begin their analysis by misstating the legal standard. There is no "presumption that expert testimony is admissible," as Plaintiffs erroneously suggest. *See* Doc. 152, p. 3.[1] Plaintiffs have ***the burden*** to prove Chandler's testimony is admissible, and nothing within Rule 702 gives them the benefit of a presumption. To the contrary, Rule 702 "has been amended to clarify and emphasize that expert testimony may not be admitted ***unless the proponent demonstrates*** to the court that it

---

[1] Page numbers cited herein refer to the document's original numbering.

1

REPLY IN SUPPORT OF MOTION TO EXCLUDE OPINIONS & TESTIMONY OF PLAINTIFFS' EXPERT WITNESS JOHN CHANDLER
CASE NO. 2:23-CV-00846-GW-MAR

is more likely than not that the proffered testimony meets the admissibility requirements set forth in the rule." Fed. R. Evid. 702 advisory committee's note to 2023 amendment (emphasis added). "This is the preponderance of the evidence standard that applies to most of the admissibility requirements set forth in the evidence rules." *Id.* Given their lack of supporting evidence, it is understandable that Plaintiffs want to fall back on a presumption to save them. But any notion of a presumption of admissibility is irreconcilable with the express language of Rule 702, as amended in 2023.

## ARGUMENT

### I. Chandler's Opinion Concerning Prospective Students' Exposure to Emails Has No Factual Basis and Contradicts the Evidence.

Plaintiffs make the same mistake as Chandler, insisting that "individuals who entered the 'prospect pool,' either through filling out a request for information or starting an application, were placed into a drip email campaign." Doc. 152, p. 9. In fact, ***only*** the prospective students who filled out a request for information form were added to drip email campaigns. Doc. 144-3, p. 109:9-10 ("These [emails] were only to people who had opted in to receive information about the program…."), p. 109:22-23 (explaining prospective students who "fil[led] out the request for information form" were added to the "prospect drip"). Prospective students would not "receive all of these e-mails" ***unless*** "they had consented to receive information." *Id.* at p. 109:13-15.

The 2U representative could not have been clearer about this; she specifically explained that those who started an application, but did not fill out a request for information form, were not included in the drip email campaigns. *Id.* at p. 53:25-54:11. Conversely, those who filled out a request for information form ***and*** started an application were moved from the "prospect drip" to the "started app" drip. *Id.* at p. 109:20-110:6. In arguing otherwise, Plaintiffs are either misreading or misrepresenting the 2U representative's testimony. Either way, the fundamental

1  premise of Plaintiffs' defense of Chandler's email opinion—that "all prospective
2  students" received the subject emails (Doc. 152, p. 12)—is wrong.

3  Plaintiffs also argue that the low open rates for the emails do not matter because
4  a person had to open the emails to unsubscribe. *Id.* at p. 14. This is a non sequitur. If
5  prospective students did not open the emails, it is irrelevant whether they unsubscribed,
6  as the end result is the same—the students did not read the emails and thus did not view
7  any ranking representation that might have been in the emails. Moreover, Plaintiffs
8  appear to assume that ***every*** email contained a ranking representation, so a prospective
9  student who wanted to unsubscribe necessarily would have seen a ranking
10 representation when they opened an email to unsubscribe. *See id.* There is no evidence
11 for this assumption. Chandler either did not analyze the thousands of pages of drip-
12 email campaign documents that 2U produced in this litigation to quantify what fraction
13 of the emails actually mentioned Rossier's ranking, or he chose not to report what he
14 found. Either way, Plaintiff Iola Favell's testimony illustrates the importance of this
15 step. She was included in a drip email campaign (and opened emails), yet she did not
16 see any ranking representation in an email. *See* Doc. 144-4, p. 106:16-20, 113:11-21.

17 Apparently sensing the weakness in their factual arguments, Plaintiffs also resort
18 to misstating the law and argue that "improper or unsupported assumptions … plainly
19 bear on the weight of [an expert's] testimony, not its admissibility." Doc. 152, p. 16
20 (quotations omitted). The Ninth Circuit disagrees. "An expert opinion is properly
21 excluded where it relies on an assumption that is unsupported by evidence in the record
22 and is not sufficiently founded on facts." *Nuveen Quality Income Mun. Fund Inc. v.*
23 *Prudential Equity Grp., LLC*, 262 Fed. App'x 822, 824 (9th Cir. 2008); *see also*
24 *McGlinchy v. Shell Chem. Co.*, 845 F.2d 802, 807 (9th Cir. 1988) (affirming exclusion
25 of expert's study that "rests on unsupported assumptions"). In fact, Rule 702 was
26 amended in 2023 specifically to clarify that the "sufficiency of an expert's [factual]
27 basis" ***is a question of admissibility***, not weight. Fed. R. Evid. 702 advisory
28

committee's note to 2023 amendment. Previous rulings to the contrary "are an incorrect application of Rules 702 and 104(a)." *Id.*

## II. Chandler's Opinion Concerning Prospective Students' Exposure to Webpages is Not Based on Any Facts or Data.

Chandler admits he does not have data that allows him to say how many prospective students visited the subject webpages or that webpage visitors even saw a ranking representation in the first place. Doc. 144-2, p. 238:5-7, 241:5-18. He also admits that he cannot provide any quantitative analysis regarding exposure via webpages due to his lack of data. Doc. 144-1, p. 82-83. Given these admissions, Chandler cannot state, without baldly speculating, that a "vast majority of matriculating students" were exposed to a ranking representation on Rossier's webpages. *Id.* at p. 81.

Plaintiffs nevertheless take issue with USC pointing out Chandler's own words—that he is relying on "commonsense … to assume" such exposure. *Id.* Plaintiffs are correct that Chandler also purports to rely on "marketing principles." *See* Doc. 152, p. 19. But that does not make Chandler's webpage opinion admissible. This is just like *Ono v. Head Racquet Sports USA, Inc.*, No. 13-CV-4222, 2016 WL 6647949, at *11 n.10 (C.D. Cal. Mar. 8, 2016). Much like Chandler opines a "vast majority of matriculating students" were exposed to a rankings representation on the webpages, the expert in *Ono* opined "it is likely that a large percentage of tour line racquet consumers were exposed to [the defendant's] marketing and advertising messages." *Id.* (quotations omitted). Much like Chandler, though, the expert in *Ono* did not offer any quantitative analysis, but just cited "general marketing principles and ideas." *Id.* That was not sufficient in *Ono*, nor is it sufficient here. *See id.*

## III. Chandler's Opinion Concerning Prospective Students' Exposure to "Other Channels" is Not Based on Any Facts or Data.

Like his webpage opinion, Chandler admittedly does not have the data necessary to provide any quantitative analysis to support his "other channels" opinion. *See*

4

Doc. 144-1, p. 84; Doc. 144-2, p. 213:1-7, 214:13-215:14, 251:13-19. Chandler is guessing, not analyzing, when he opines that the "other channels" "contributed significantly" to exposure. *See* Doc. 144-1, p. 83. While it may be reasonable for Chandler, or any lay person, to conclude the "other channels" contributed to exposure, there is absolutely no basis for Chandler to opine on the extent to which they contributed, *i.e.*, "significantly." Again, Chandler's own words confirm he is speculating: "These additional channels ensure that, if a student somehow avoided the rankings via [emails and webpages], ***they might well have been exposed*** via these other, non-quantifiable channels." *Id.* at p. 84 (emphasis added).

Plaintiffs do not cite anywhere in the record to support their bare assertion that "Chandler does far more than provide a general overview of general marketing principles." *See* Doc. 152, p. 22-23. Plaintiffs' defense of Chandler's "other channels" opinion—much like Chandler's opinion itself—is entirely conclusory.

## CONCLUSION

USC respectfully requests this Court exclude the exposure opinions and testimony of Plaintiffs' expert Dr. John Chandler for purposes of class certification, summary judgment, and trial.

Dated: October 10, 2024

Respectfully submitted,

**SHOOK, HARDY & BACON L.L.P.**

By: /s/ *Michael L. Mallow*
        Michael L. Mallow

**Attorney for Defendant**
**University of Southern California**

# CERTIFICATE OF COMPLIANCE

The undersigned counsel of record for the University of Southern California certifies that this brief contains 1,483 words, which complies with the word limit of L.R. 11-6.1.

By: /s/ *Michael L. Mallow*
Michael L. Mallow